United States Court of Appeals
Fifth Circuit

**F I L E D**

April 19, 2004

Charles R. Fulbruge III
Clerk

Revised May 7, 2004

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

---

**No. 03-60526**

---

**UNITED STATES OF AMERICA,**

                                        **Plaintiff-Appellee,**

                        **versus**

        **ERNEST HENRY AVANTS,**

                                        **Defendant-Appellant.**

---

**Appeal from the United States District Court
for the Southern District of Mississippi**

---

Before DAVIS, BARKSDALE, and PRADO, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

This appeal from a conviction in 2003 concerning a racially motivated murder in a national forest in 1966 primarily presents constitutional due process and confrontation issues. Ernest Henry Avants was convicted for aiding and abetting the premeditated murder of Ben Chester White. *See* 18 U.S.C. §§ 1111 (murder), 7(3) (territorial jurisdiction over lands acquired by the United States), and 2 (aiding and abetting).

This 37-year delay, and attendant procedures utilized because of it, generated numerous issues. For example, as a result of this great passage of time, key witnesses had died; therefore, among

other hearsay evidence, their testimony from almost 40 years before was read to the jury at the 2003 trial.

The principal issue raised by Avants is whether the indictment should have been dismissed because of the delay in obtaining it; among other things, Avants claims bad faith by the Government. He also presents many other challenges, quite a few for the first time on appeal: evidentiary rulings, including admitting testimony from a 1966 state court preliminary hearing; evidence sufficiency; requested jury instruction refusal; and sentencing at a federal prison in Texas by the trial judge from the Southern District of Mississippi for a crime committed there. **AFFIRMED**.

## I.

Shortly before James Jones, on 11 June 1966, reported his automobile stolen, Mississippi law enforcement officers had found the intentionally burned vehicle. The next day, the body of Ben Chester White, a 67-year-old black sharecropper, was found beneath a bridge in Homochitto National Forest, in Adams County, Mississippi. While in custody the following day, Jones began making statements to Mississippi law enforcement officers, implicating himself, Claude Fuller, and Avants in White's racially motivated murder.

Jones' statements were in June and July 1966: one on 13 June; two on 14 June; one on 17 June (testimony at Fuller's and Avants' separate state court preliminary hearings); one on 5 July; and one

2

on 15 July (recorded statement to the state prosecutor).  Jones'
June 1966 preliminary hearing testimony and his July 1966 statement
to the prosecutor were read to the jury at Avants' trial on the
federal charge in 2003.

According to Jones' 1966 preliminary hearing testimony, the
murder occurred as follows.  Jones drove to Fuller's house in the
early evening on 10 June (Friday).  Avants arrived approximately 30
minutes after Jones did.  After the three men proceeded in Jones'
automobile to White's house, where they asked him about a lost dog,
White got into the automobile with them.  With Jones driving, they
entered the national forest.  After Jones drove across a bridge,
Fuller instructed him to turn the automobile around; Jones did so
and stopped on the bridge.  Fuller exited from the front passenger
seat with a rifle (M—2 carbine); Avants, from the seat behind the
driver with a shotgun.  Both men walked to where White was sitting
(rear passenger-side).  Fuller ordered White to exit the vehicle.
When White did not do so, Fuller shot him with the rifle at least
15 times in rapid succession and then told Avants:  "Now you shoot
him with the shot gun [*sic*]".  Avants fired once; "the [shotgun]
blast blew [White's] head off".  Fuller and Avants removed White's
body from the automobile and threw it over the bridge.  Because of
the resulting condition of Jones' automobile, Fuller and Avants
burned it at another location.  Fuller instructed Jones to report
the vehicle stolen.

In the 15 July 1966 recorded statement to the state prosecutor, Jones admitted that, two weeks before the murder, he, Fuller, and two other individuals (but not Avants) had driven to White's house to kill him. But, because others were present, they did not do so. Relevant to Avants, the 15 July statement provided: on the day of the murder, while Jones was at Fuller's house, but before Avants' arrival, Fuller told Jones to "just take it easy; I got a fellow will be by in a minute"; later, when Jones' automobile stopped on the bridge, "Avants bailed out on the other side of the car at the same time ... Fuller did", with both men carrying their guns; and Jones helped Fuller and Avants drop White's body over the bridge.

Avants was indicted on state murder charges. On 13 March 1967, prior to his state trial late that year, Avants was interviewed by FBI Special Agents Kornblum and Boyle, concerning another racially motivated murder. In that interview, Avants volunteered that he had shot White with a shotgun. Among other comments, he stated: "Yeah, I shot that nigger.... I shot [White]. I blew his head off with a shotgun".

In December 1967, Avants was acquitted of the state charges. Jones' trial ended in a hung jury. Fuller was never tried.

According to the Government, the case was brought to its attention in 1999, when a national news program provided a videotape of a recent interview with Avants. As a result, the Government became aware that the site of the crime (a national

4

forest) supplied a basis for federal prosecution. *See* 18 U.S.C. § 7(3) (territorial jurisdiction of the United States). In June 2000, Avants was indicted in the Southern District of Mississippi on a federal charge for White's murder, based on the murder taking place in the national forest.

During pretrial motions, the district court ruled that Avants' 13 March 1967 statement to Special Agents Kornblum and Boyle (including, "I blew [White's] head off with a shotgun") would be excluded. As a result of the Government's interlocutory appeal, the ruling was reversed. *United States v. Avants*, 278 F.3d 510 (5th Cir.), *cert. denied*, 536 U.S. 968 (2002).

A three-day trial took place in February 2003. In the time between the 1966 murder and 2003 trial, witnesses had died: Jones; Fuller; the woman who worked in the store where they stopped; the police officer who had taken Jones' stolen vehicle report; and Dr. Scanlon, who performed White's autopsy. Witnesses who were still alive (the then 10-year-old and 11-year-old who found White's body; the then 21-year-old neighbor who saw White drive off in Jones' automobile) were considerably older than they had been at the time of events. Certain physical evidence had become unavailable: White had been buried shortly after his death, and even if the exact site were found, little could be learned; and X-rays from the postmortem examination could not be located.

5

The evidence presented at trial by the Government included: Jones' 17 June 1966 state preliminary hearing testimony and 15 July 1966 statement to the state prosecutor (read to the jury); testimony (read to the jury) from Avants' preliminary hearing and Jones' trial by Dr. Scanlon (deceased), who performed the autopsy on White; testimony by Dr. Hayne, a pathologist; and testimony by Kornblum, one of the FBI Special Agents to whom Avants stated in March 1967 that he had shot White with a shotgun. Avants presented Dr. Galvez, a pathologist.

The jury found Avants guilty. Because of Avants' health, and over his objection, sentencing was held in Texas, where Avants was incarcerated to ensure proper medical treatment, rather than at the place of trial — the Southern District of Mississippi. He was sentenced to life imprisonment.

## II.

The numerous issues raised by Avants include: pre-indictment delay; evidentiary rulings; evidence sufficiency; requested jury instruction refusal; and sentencing venue. Many of these issues are raised for the first time on appeal.

## A.

Avants contends that, for the facts at hand, the Government's indicting him in June 2000 for a crime committed in June 1966, 34 years earlier, violates due process. The crime for which Avants was indicted does not have a statute of limitations, but the Fifth Amendment's due process clause limits the time after an offense

6

within which the Government may bring an indictment. ***United States v. Lovasco***, 431 U.S. 783, 788-89 (1977); ***United States v. Marion***, 404 U.S. 307, 324 (1971).

For our circuit's two-part test for determining whether pre-indictment delay violates due process, an accused must show:  the delay "was intentionally brought about by the government for the purpose of gaining some tactical advantage over the accused in the contemplated prosecution or for some other bad faith purpose"; and "the improper delay caused actual, substantial prejudice to his defense".  ***United States v. Crouch***, 84 F.3d 1497, 1523 (5th Cir. 1996) (en banc), *cert. denied*, 519 U.S. 1076 (1997).  In short, the burden is on the defendant to satisfy both parts.  *See* ***United States v. Jimenez***, 256 F.3d 330, 345 (5th Cir. 2001), *cert. denied*, 534 U.S. 1140 (2002).

As he did in district court, Avants urges a more favorable test, employed by a minority of circuits. *E.g.,* ***Howell v. Barker***, 904 F.2d 889, 895 (4th Cir.) (once defendant shows actual prejudice, court balances prejudice against Government's justification for the delay), *cert. denied*, 498 U.S. 1016 (1990). Of course, we must follow precedent established by an earlier panel, *e.g.,* ***United States v. Tampico***, 297 F.3d 396, 404 n.4 (5th Cir. 2002), not to mention a decision by our *en banc* court (as is ***Crouch***).

The district court's factual determinations are reviewed only for clear error; its conclusions of law, *de novo*.  *E.g., **United States v. Beszborn***, 21 F.3d 62, 66 (5th Cir.), *cert. denied sub nom. **Westmoreland v. United States***, 513 U.S. 934 (1994).  Under the clear error standard, "we defer to the findings of the district court unless we are left with a definite and firm conviction that a mistake has been committed".  ***Payne v. United States***, 289 F.3d 377, 381 (5th Cir. 2002).

Pre-trial, in July 2000, Avants moved to dismiss the indictment because, *inter alia*, it violated due process.  For our two-part test, he alleged for the bad faith prong that the "prosecution intentionally or negligently delayed the indictment in order to obtain a tactical advantage ... thirty years after the offense".  In that regard, he contended:  there was no legitimate investigatory need for the delay; and, in the absence of such need, the court should "infer that the decision was made in order to gain an advantage over Avants".  For the prejudice prong, Avants alleged:  evidence he had used when tried in state court in 1967 had become unavailable; evidence had become available to the Government that had not been available in 1967; and the passage of time had made it impossible to impeach the evidence that had become available to the Government.

The Government offered its explanation for why Avants was not indicted on federal charges in the aftermath of the murder:  the

8

Department of Justice (DOJ) had then considered only charging Avants with a civil rights offense, with a five-year limitations period (the Government presented a July 1970 memorandum from an Assistant Attorney General in the DOJ Civil Rights Division, stating that the limitations period would expire in 11 months); the Government elected not to indict within that period; and the matter lay dormant until 1999, when the possibility of territorial jurisdiction was brought to its attention.

At a 1 September 2000 hearing, the district court heard evidence and argument on the motion to dismiss. The court found: for the bad faith prong, Avants had not shown "there was an intentional ... tactical decision to delay the prosecution for the purpose of disadvantaging [Avants] in some way"; and, for the prejudice prong, Avants had not made the requisite showing of "actual and substantial" prejudice. Accordingly, the motion to dismiss was denied (orally) at the hearing.

On 10 January 2003, Avants moved again to dismiss for pre-indictment delay. For this second motion, Avants presented all the claims from his first, as well as claiming additional prejudice because of ill health. (He had suffered a stroke during the pendency of the Government's interlocutory appeal (from the October 2000 notice of appeal to our January 2002 decision and the June 2002 denial of Avants' petition for a writ of certiorari).) The district court denied this motion on 29 January 2003 because, a few days earlier (23 January), it had found Avants competent to stand

9

trial; therefore, there was no incompetency to serve as part of the prejudice needed to support the second prong for a due process violation.

We do not address this second motion for two reasons. First, Avants does not challenge the competency ruling; therefore, he has waived the only issue new to the second motion. Second, we resolve this due process claim solely on the basis of the bad faith prong, for which Avants' health has not been placed in issue; restated, for Avants' claim, as discussed below, it bears only on the prejudice prong.

Avants offers two reasons why the district court should have found the requisite bad faith: first, because it is clear there was a possibility of a federal prosecution in the years following the murder but the Government elected not to prosecute, the "clear inference" is that it delayed in order to gain a tactical advantage, including awaiting the deaths of Jones and Fuller; and second, "in the absence of a legitimate reason for the delay", it should be inferred that the decision not to prosecute was made in order to gain an advantage over Avants. At the September 2000 hearing, Avants admitted that the only evidence concerning the bad faith prong was the 1970 DOJ memorandum, which stated: there were 11 months left in the limitations period; and the DOJ Civil Rights Division "want[ed] to make a determination as to whether ... the death of the victim [was] prosecutable".

As stated, the district court found there was no tactical delay.  Considering the DOJ memorandum and the Government's explanation for why Avants was not prosecuted then, the district court's finding *no* bad faith by the Government was not clearly erroneous.  As also stated, because Avants cannot satisfy the bad faith prong, we need not address the second (prejudice).

B.

Avants maintains the district court reversibly erred with respect to numerous evidentiary rulings:  in admitting Jones' 1966 preliminary hearing testimony;  in permitting the Government's pathologist to opine on the kind of weapon that caused the wound to White's head; and in excluding evidence for impeaching Jones — his 9 September 1970 statement to FBI Agents that he "knew nothing", described *infra*, and his two convictions from the 1930s.

Avants also contests the exclusion of:  the docket sheet from Jones' state trial and evidence of occurrences at that trial, which Avants claims demonstrates Jones repudiated his statements made before Jones' state trial;  and statements about Jones' mental health (claimed to be insane) at the time he made the statements later introduced at Avants' federal trial.  Because Avants failed to adequately brief these contentions, they are waived.  *E.g., Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 260 n.9 (5th Cir. 1995).  (In the alternative, there was no reversible

11

error concerning the rulings challenged by these inadequately briefed issues.)

Evidentiary rulings are reviewed for abuse of discretion; however, in the absence of a proper objection, we review only for plain error. FED. R. EVID. 103; *e.g., **United States v. Polasek***, 162 F.3d 878, 883 (5th Cir. 1998). Under the plain error standard, Avants must show "clear or obvious error that affects his substantial rights"; even then, we retain discretion whether to correct the forfeited error. ***United States v. Redd***, 355 F.3d 866, 874 (5th Cir. 2003). Generally, we will not do so unless the error "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings". ***United States v. Fullwood***, 342 F.3d 409, 413 (5th Cir. 2003) (alteration in original), *cert. denied*, 124 S. Ct. 1087 (2004).

1.

Avants' 31 July 2000 motion *in limine* sought to exclude Jones' 1966 preliminary hearing testimony. The Government offered the testimony under Rule 804(b)(1) (testimony by an unavailable declarant at a prior hearing, in the same or different proceeding, is admissible hearsay if the party against whom it is offered had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination). That "Rule ... allows admission of the prior testimony of a deceased witness if the defendant 'had an opportunity and similar motive to develop the

12

testimony by ... cross ... examination'". ***United States v. Tannehill***, 49 F.3d 1049, 1057 (5th Cir.), *cert. denied*, 516 U.S. 859 (1995). Without naming either the Confrontation Clause or the Sixth Amendment in which it is found, Jones' motion offered three reasons for excluding the evidence: Rule 804(b)(1) was not applicable because in 1966 Avants did not have a similar motive to impeach Jones as he would have if Jones had been available to testify in 2003; there were insufficient indicia of reliability; and Rule 403 barred it (permitting exclusion if probative value of evidence is substantially outweighed by, *inter alia*, unfair prejudice).

The requested exclusion was addressed at the 1 September 2000 evidentiary hearing, which included testimony by Avants' attorney at the 1966 preliminary hearing. In denying the motion, the court found: Jones was deceased; on 17 June 1966, a preliminary hearing had been held for Fuller and then for Avants; Jones testified at both; Avants had been represented by counsel, who "agreed [at the 1 September 2000 hearing] that he must have been present at the preliminary hearing of Fuller since he agreed that the testimony from that hearing would be considered and included in part of the record in Avants' [subsequent] preliminary hearing"; and Avants "had the opportunity to develop the testimony by cross-examination since he had an attorney representing him who did, in fact, cross-examine Jones".

The district court considered Avants' real challenge to admitting the prior testimony as being whether he had a similar motive; according to Avants, when Jones testified in 1966, the practice by defense counsel for Mississippi preliminary hearings was to use them to discover the prosecution's case without providing information that could be used in defense. Pursuant to *Tannehill* and *United States v. Mann*, 161 F.3d 840, 861 (5th Cir. 1998), *cert. denied*, 526 U.S. 1117 (1999), the district court ruled that Avants had a similar motive: "He could have discredited [Jones] or attempted to do so through the cross-examination by his counsel". The court determined that the cross-examination of Jones at the 1966 preliminary hearing was intended to develop a theory that Avants could not be guilty of murder because White was already dead when Avants shot him; and it held that a change in strategy "does not mean that [Avants] has changed motive or did not have motive to cross-examine and develop [Jones' 1966] testimony as to the truth". The court did not address the other two bases Jones raised for exclusion: the lack of reliability of the preliminary hearing testimony or Rule 403. (On 10 January 2003, Avants renewed his motion to exclude the preliminary hearing testimony. On 29 January 2003, the day it denied the second motion claiming pre-indictment delay, the district court denied the renewed exclusion motion as being repetitive.)

14

Avants contends the 1966 preliminary hearing testimony should have been excluded for the three reasons presented in his motion *in limine*: Rule 804(b)(1); lack of reliability (a Sixth Amendment Confrontation Clause challenge); and Rule 403. (Avants' contemporaneous objection at trial was not sufficiently specific to preserve error; but, pursuant to the 2000 amendment to Federal Rule of Evidence 103, a pretrial "definitive ruling on the record admitting or excluding evidence", as in this case, is sufficient to do so. FED. R. EVID. 103(a); *see* **Mathis v. Exxon Corp.**, 302 F.3d 448, 459 n.16 (5th Cir. 2002).)

a.

The district court did not abuse its discretion in ruling that the 1966 preliminary hearing testimony was admissible through Rule 804(b)(1). That Rule requires that Avants have an opportunity and similar motive for cross-examination at the preliminary hearings. Obviously, his attorney had the requisite opportunity to cross-examine Jones at Avants' preliminary hearing in 1966; he actively did so. Avants' counsel at that 1966 hearing made the strategic decision to permit Jones' testimony at Fuller's preliminary hearing earlier that day to be part of the record against Avants at his subsequent preliminary hearing. If Avants' then-counsel did not actively cross-examine Jones about what he said at Fuller's preliminary hearing, it was because he chose to focus his cross-examination on other parts of Jones' testimony.

15

For this appeal, Avants did not present any evidence of the scope of the charges against him in his state prosecution. For example, some evidence that would tend to undermine a murder charge (that the victim was already dead when the defendant shot him) might not tend to undermine a charge of aiding and abetting murder (in which the Government does not have the burden of proving that the defendant committed a homicidal act).

Stated somewhat differently, at his 2003 federal trial, Avants may have had to discredit Jones on more elements than he did at the 1966 state preliminary hearing. But, particularly where the scope of Avants' state prosecution does not appear in the record, we can only conclude that, in both situations, his motive was to discredit a witness (Jones) whose testimony could, if believed, convict him. Avants' counsel for the state prosecution could have tried to discredit Jones about Avants' presence at the murder, or Avants' intent at the time. The matters on which Jones was to be discredited were a matter of trial strategy, which do not make motive dissimilar. *Tannehill*, 49 F.3d at 1057.

In sum, Avants has not presented any reason why the district court abused its discretion in ruling that in 1966 Avants had the requisite similar motive to discredit Jones as he did in 2003. *See id*. Therefore, the district court did not abuse its discretion in admitting the testimony pursuant to Rule 804(b)(1).

16

b.

In district court, Avants claimed the 1966 preliminary hearing testimony lacked reliability. On the other hand, Avants did not specifically raise a possible violation of the Sixth Amendment's Confrontation Clause through the admission of such testimony. Arguably, review would be only for plain error. In any event, there was no error.

At the time of the district court proceedings, *Ohio v. Roberts*, 448 U.S. 56 (1980), provided that the Confrontation Clause was not violated if the evidence was within a firmly rooted hearsay exception, or if there were particular indicia of reliability. *See id*. at 66. As noted, the testimony at issue was admitted under Rule 804(b)(1), a firmly rooted exception. *Mann*, 161 F.3d at 861. As such, the admission was constitutionally permissible.

But, after oral argument for this appeal, the Supreme Court reversed *Roberts* in *Crawford v. Washington*, 124 S. Ct. 1354, 1374 (2004) ("Where testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination."). Reliability alone, the Court held, is insufficient to satisfy the Confrontation Clause. The qualities that made Jones' testimony admissible under 804(b)(1) make it meet *Crawford*'s Confrontation Clause test: unavailability and prior opportunity for cross-examination. In this instance, *Crawford* did not alter the rule that evidence within

17

the firmly rooted hearsay exception expressed in Rule 804(b)(1) satisfies the Confrontation Clause.

c.

Regarding Rule 403, Avants does not contend that the district court erred by not explicitly ruling on his claim under that Rule. Therefore, we understand his contention as challenging the result of the district court's requisite balancing in implicitly denying that claim.

The prejudicial effect of the testimony was that, if the jury found it credible, it would be more likely to find that the Government had met its burden in proving Avants' guilt. Obviously, this is not the kind of unfair prejudice that Rule 403 is meant to prevent. *See, e.g., **United States v. Wilson***, 355 F.3d 358, 361 (5th Cir. 2003) (district court did not abuse discretion in admitting evidence substantiating a "central issue in the case"). Therefore, the district court did not abuse its discretion in not excluding the evidence on this basis.

2.

Concerning Dr. Hayne's testimony as an expert in forensic pathology for the Government (at trial, Dr. Hayne was accepted without objection), Avants maintains it was reversible error for the district court to permit Dr. Hayne to opine that the wound to White's head was caused by a shotgun (the type firearm carried by Avants) and not by a rifle (the type firearm carried by Fuller).

Avants contends that this was improper for two reasons:  it amounted to Dr. Hayne's testifying that certain hearsay declarants were telling the truth; and such hearsay is not the kind of evidence that pathologists generally rely upon in reaching conclusions.

a.

Evidentiary objections must be specific.  FED. R. EVID. 103(a)(1); *Polasek*, 162 F.3d at 883 ("a trial ... judge must be fully apprised of the grounds of an objection").  There was *no* objection on the basis that Dr. Hayne was somehow impermissibly testifying to the truthfulness of other witnesses.  Therefore, we review only for plain error.

Dr. Hayne had reviewed the autopsy report prepared at the time of White's death, photographs of the body, and scholarly literature on ballistics.  In addition, he relied upon:  Jones' 1966 preliminary hearing testimony about how far Fuller was from the automobile when he shot White; a hearsay account, not introduced at the federal trial, of a witness who heard the shooting; and Avants' March 1967 statement that he had shot White with a shotgun.  He drew upon each of these sources of information and reached the conclusion that they were "not only consistent [about the use of the shotgun], but they're mutually supportive of each other".  The error, if any, was neither "clear" nor "obvious"; there was no plain error.

19

b.

It is a closer question whether Avants preserved at trial his contention that the hearsay relied upon by Dr. Hayne (Jones' 1966 preliminary hearing testimony; Avants' statement in March 1967 he had shot White; the witness who heard the shooting) is not the kind of evidence generally relied upon by pathologists. On direct examination of Dr. Hayne, the Government asked:

> Based upon your reading of [Dr. Scanlon's postmortem] report and to a reasonable medical certainty, can you tell the jury the type of instrumentality or weapon that caused the injury that you have just testified about to the head of Ben Chester White?

Dr. Hayne answered:

> *With the confirmation of other information provided to me* it would be with reasonable medical certainty that a shotgun was used in close proximity to Mr. White's head to inflict the injuries to the forehead and to the cranial vault of Mr. White.

(Emphasis added.) Avants' counsel did not object.

Later on direct examination, the Government asked Dr. Hayne whether the "massive injury" to White's head was either consistent or inconsistent with the kind of firearm used by Fuller (carbine). Again without objection, Dr. Hayne answered: "It's inconsistent, sir, for several reasons". Upon the Government's asking Dr. Hayne to identify those reasons, he stated, relying in part on a hearsay statement (Jones' 1966 preliminary hearing testimony): the carbine was fired about three inches from the vehicle; and the powder marks

on White's forehead were inconsistent with such a gun fired from that distance.  At this point, Avants' counsel objected:

> Your Honor, I'm going to object to that conclusion because that's based on too much speculation.  There's some – he received some hearsay information, apparently, as to the distance of the carbine when it was fired.

> But I don't think this doctor can say that he has an opinion based upon reasonable medical certainty how far away from the head that rifle was when it was fired because there's been nothing that would verify something like that except anecdotal hearsay.

Arguably, this objection does not specifically identify the issue of the practices for forensic pathology.  But, even assuming that it does, and therefore applying the less deferential abuse of discretion standard, rather than that for plain error, we find no reversible error.

As noted, Dr. Hayne was accepted by Avants as an expert in forensic pathology.  Expert witnesses are permitted, of course, to draw on a wide range of sources in forming their opinions.  FED. R. EVID. 703.  For example, Rule 703 does not require a "personal examination" of the "person or object of the expert's testimony".  *Peteet v. Dow Chemical Co.*, 868 F.2d 1428, 1432 (5th Cir.), *cert. denied*, 493 U.S. 935 (1989).  Dr. Hayne testified that it was his practice as a pathologist to gather information other than through his own examinations; Avants did not object.  When Avants asserted to the district court that pathologists cannot take hearsay and reconstruct what happened, the district court responded:  "I

21

disagree with you, if he says he can do it within the parameters of his expertise. And I see nothing that he's set forth thus far that would not fall within that expertise". The district court was aware that there were limits on what Dr. Hayne could testify to, and determined that he had not exceeded them. Avants has not shown an abuse of the discretion accorded district judges for evidentiary rulings of this type concerning expert witnesses.

### 3.

Avants called one witness: a pathologist to counter the testimony of the Government's. He contests the pretrial ruling that he would not be permitted to introduce certain other evidence.

### a.

Two FBI Agents met with Jones on 9 September 1970; two days later, on 11 September, they prepared a form memorandum of the meeting (the memorandum). The memorandum states that, after they identified themselves as FBI Agents and told Jones they were investigating White's murder, Jones: declined to sign a "Warning and Waiver form"; "stated that he knew nothing of the killing of BEN CHESTER WHITE"; stated he would "only discuss this matter in the presence of his attorneys"; and "was extremely nervous".

Because the district court had admitted Jones' 1966 preliminary hearing testimony, Avants sought to introduce evidence to impeach Jones, the hearsay declarant. Avants moved *in limine* to have six statements by Jones, including the memorandum, admitted

22

for that purpose. The Government conceded the admissibility of one statement and Avants withdrew his request for four. Regarding the sixth (the memorandum), Avants apparently proposed to use the memorandum as a prior inconsistent statement, admissible under Rules 806 (credibility of hearsay declarants may be impeached) and 613(b) (using prior statements to impeach witnesses).

At a hearing on the first day of trial, the district court ruled that the memorandum was not admissible for that purpose because, in the context of the interview, including Jones' being a suspect and not being willing to discuss the matter without his attorney's being present, Jones' saying "he knew nothing of" White's murder was a statement that had "no indicia of truthfulness"; it was merely a form of stating that he did not wish to talk to the FBI Agents.

Avants contends that the district court abused its discretion because it impermissibly infringed on the proper realm of the jury. This contention was not presented to the district judge; therefore, we review only for plain error.

In order for a prior inconsistent statement to be admissible for impeachment purposes, there must be a preliminary finding that statements are inconsistent. "Preliminary questions" of admissibility are for the trial judge. FED. R. EVID. 104. In this instance, this preliminary decision was neither "clear" nor "obvious" error. Accordingly, there was no plain error. (In the

23

alternative, even if the issue was properly raised, and even assuming there was error, it was harmless.)

                                    b.

Jones was convicted in 1935 of breaking and entering; in 1938, of grand larceny. Avants moved to use these convictions to impeach Jones' testimony from 1966. The district court applied the ten-year time limit found in Rule 609: "The time limit here clearly prohibits the introduction of this evidence". The court stated: the convictions would have been too old even in a prosecution shortly after the murder; and they were too old to be introduced at a trial in 2003.

In district court, Avants contended that the court should exercise its discretion to admit the over-age convictions. He contends on appeal that the district court erred in not doing so; we review that decision for abuse of discretion. (As shown below, the district court did not do so.) In addition, Avants presents three contentions that were not presented in district court: Rule 609 (and its age limitation) did not apply because the Rule did not exist at the time of the murder; the district court erred by not undertaking an on-the-record balancing to determine whether the probative value of the over-age convictions substantially outweighed their prejudicial effect, FED. R. EVID. 609(b); and the convictions were admissible under Rule 404(b) to show motive to testify falsely. We review these three new contentions for plain error.

                                    24

There was no plain error in applying Rule 609 and its age-limitations in a 2003 trial for a crime committed before the Rule was adopted. The Rules are applicable in prosecutions begun after their enactment in the absence of a showing that doing so "would not be feasible, or would work injustice". *United States v. Cohen*, 544 F.2d 781, 784 (5th Cir.) (quotation marks omitted), *cert. denied*, 431 U.S. 914 (1977). Avants did not contend in district court that injustice would result from applying the Rules in his 2003 trial; therefore, any error could not be "clear" or "obvious".

Rule 609 provides for an exception to the ten-year limit when a conviction's probative value "substantially outweighs" its prejudicial effect. Accordingly, Avants asserts it was error for the district judge not to undertake an on-the-record balancing with regard to this exception. But this balancing-requirement applies only when over-age convictions are *admitted*; in other words, it is not required when they are *excluded*. *United States v. Estes*, 994 F.2d 147, 149 (5th Cir. 1993).

Along this line, Avants contends that, if undertaken, such a balancing would show probative value outweighed prejudicial effect because Jones was convicted of "crimes of dishonesty". *See* FED. R. EVID. 609(a)(2). At trial, Avants conceded the convictions fell under Rule 609(b) and its ten-year limitation. (Impeachment by evidence of conviction, of whatever kind of crime, is subject to

25

the time limit in Rule 609(b).)  The district court did not abuse its discretion.

(2)

Finally, for the first time on appeal, Avants contends that, under Rule 404(b) (permitting other crimes and bad acts to be admitted as proof of, *inter alia*, motive), the 1930s convictions were admissible to show a motive to testify falsely. *See **United States v. Tomblin***, 46 F.3d 1369, 1388 (5th Cir. 1995) ("Whether Rule 404(b) or Rule 608(b) applies to the admissibility of other-act evidence depends on the purpose for which the prosecutor introduced the other-acts evidence.  Rule 404(b) applies when other-acts evidence is offered as relevant to an issue in the case, such as identity or intent.  Rule 608(b) applies when other-acts evidence is offered to impeach a witness, to show the character of the witness for untruthfulness, or to show bias." (citations and quotation marks omitted)).

For present purposes, we need not address this question other than to hold that the district court did not plainly err in not *sua sponte* raising the issue of Rule 404 and in not concluding that the convictions from the 1930s were admissible under it.

C.

At the close of the Government's case in chief, Avants moved for a judgment of acquittal, pursuant to FED. R. CRIM. P. 29(a).  The motion was denied; it was not renewed at the close of all the

evidence. Accordingly, as the Government notes and as Avants conceded at oral argument here, this challenge to evidence sufficiency is reviewed only for a manifest miscarriage of justice — the record must be devoid of evidence of guilt or the evidence must be so tenuous that a conviction is shocking. *E.g.,* **United States v. Burton**, 324 F.3d 768, 770 (5th Cir. 2003).

1.

For aiding and abetting premeditated murder, the Government had to prove: there was a premeditated killing with malice aforethought, *see* **United States v. Shaw**, 701 F.2d 367, 392-93 (5th Cir. 1983), *cert. denied*, 465 U.S. 1067 (1984); and Avants associated with the criminal venture, participated in it, and sought to make it successful, **United States v. Dukes**, 139 F.3d 469, 474 (5th Cir.), *cert. denied*, 525 U.S. 894 (1998). There was no direct evidence of Avants' intent; but, as discussed *supra*, there was evidence of his guilt for the charged offense. The conviction was not a manifest miscarriage of justice.

For example, on the evening of the murder, Fuller and Jones waited for Avants to arrive; Fuller had told Jones they were waiting for Avants; when the automobile stopped on the bridge (after Jones was instructed to return the vehicle to the bridge, from which White's body was dumped), Avants and Fuller simultaneously got out of the automobile and walked around to

27

White's door with their guns; after Fuller shot White with a rifle, Avants shot White in the head with a shotgun at close range.

2.

In Avants' reply brief, his counsel maintain their failing to renew the motion for judgment of acquittal at the close of all the evidence "constitutes ineffective assistance of counsel" (IAC). Generally, we will neither consider an issue raised for the first time in a reply brief nor consider an IAC claim if not first presented in district court, so that the court can develop a "record on the merits of the allegations". ***United States v. Sanchez-Pena***, 336 F.3d 431, 445 (5th Cir. 2003). This appeal does not present an exception to either rule.

D.

The district court refused Avants' requested jury instructions on the crimes of accessory after the fact (18 U.S.C. § 3) and misprision of a felony (18 U.S.C. § 4). Avants contends that the district court was required to instruct on these offenses, as lesser included offenses, because there was sufficient evidence to convict him on them.

"A defendant is entitled to a jury instruction on a lesser included offense if (1) the elements of the lesser offense are a subset of the elements of the charged offense (statutory elements test), and (2) the evidence at trial permits a rational jury to find the defendant guilty of the lesser offense yet acquit him of

the greater." *United States v. Fitzgerald*, 89 F.3d 218, 220 (5th Cir.), *cert. denied*, 519 U.S. 987 (1996).  We review the first prong *de novo*; the second, for abuse of discretion. *United States v. Estrada-Fernandez*, 150 F.3d 491, 494 (5th Cir. 1998).  "Where the lesser offense requires an element not required for the greater offense, no instruction is to be given under Rule 31(c)." *Schmuck v. United States*, 489 U.S. 705, 716 (1989).

Neither misprision of a felony nor accessory after the fact are lesser included offenses of aiding and abetting murder. *Compare* FIFTH CIRCUIT MODEL JURY INSTRUCTION 2.07 (accessory after the fact) *and* 2.08 (misprision of a felony), *with* 2.06 (aiding and abetting).  For example, misprision of a felony is not a lesser included offense of aiding and abetting because the former requires proof that the defendant "failed to notify authorities of the felony". *United States v. Adams*, 961 F.2d 505, 508 (5th Cir. 1992).  And accessory after the fact is not a lesser included offense of aiding and abetting because the former requires proof that the defendant gave assistance "in order to prevent the apprehension, trial, or punishment of the offender". *United States v. De la Rosa*, 171 F.3d 215, 221 (5th Cir. 1999).

Accordingly, we need not consider the abuse of discretion prong for the test.  The requested instructions were properly refused.

E.

29

Avants was found guilty in February 2003; sentencing was set for that May. The district court, "aware from pretrial competency hearings that Avants is in his seventies, has suffered a stroke, and is on numerous medications", and believing that, pending sentencing, locally used jail facilities could not provide him proper medical care, ordered Avants into the custody of the Bureau of Prisons (BOP) and recommended that he be placed in a facility "having the ability to take care of his extensive medical needs". Avants was placed in a federal facility in the Northern District of Texas.

Shortly before the scheduled sentencing, Avants moved to continue it; according to Avants, personnel at the BOP facility in Texas believed he was too ill to travel to Jackson, Mississippi, for sentencing. The order continuing sentencing indefinitely stated:

> Because of the unusual circumstances of this case, the United States will be allowed to investigate and make suggestions as to any alternative arrangements that might be made to sentence [Avants] other than having him appear in Jackson, Mississippi.

Later in May 2003, the district court set sentencing for that June: "Because the Defendant is ill and unable to travel, sentencing will be held at the Federal Medical Center ... [in] Texas".

Avants filed a written objection to being sentenced in Texas, "or at any other location outside of the Southern District of Mississippi, for the reason that holding his sentencing outside

this District is in violation of Article III, Section 2 of the United States Constitution [criminal trials shall be held in State where crime committed], the Sixth Amendment to the United States Constitution [criminal trial by jury drawn from State and district in which crime committed], and Rule 18 of the Federal Rules of Criminal Procedure [prosecution in district where offense committed]". The Government responded that, without such a procedure, Avants was in legal limbo, unable to appeal because there was no judgment; it also noted that the district judge had received permission from this court's chief judge to hold court in the Northern District of Texas, pursuant to 28 U.S.C. § 292(b) ("The chief judge of a circuit may, in public interest, designate and assign temporarily any district judge of the circuit to hold a district court in any district within the circuit."). In denying Avants' objection, the district court stated:

> Under these unusual circumstances, the Court opines that it has taken all necessary and reasonable steps to ensure that sentencing Avants in [Texas] is justified. Continuing with the sentencing process in [Texas] ... is in the best interest of all parties. Both the interest of justice and the interest of Avants will be served by finally concluding this case.

At the sentencing hearing, the district judge stated: Avants had an absolute right to be present at sentencing; because he could not be brought to the court, it had come to him. The district judge noted that counsel for the Government and Avants, as well as members of Avants' family, were in attendance. The court

31

acknowledged the § 292(b) order from this court's chief judge, but stated that it was not necessary: "The court feels ... that I may without this order impose a sentence, as I am sitting in the Southern District of Mississippi and where the authority is for this sentencing and where the conviction took place".

Avants declined to say anything on his behalf. He was sentenced to life imprisonment.

On appeal, Avants raises the same issues raised in district court. (For the first time on appeal, however, he also raises FED. R. CRIM. P. 21 (governing transfers of cases between judicial districts); we will not address it.) Like the parties and the district court, we have been unable to find authority addressing the issue posed by Avants. He does not challenge the jurisdiction of the federal court; it had jurisdiction by virtue of the violation of a federal law. 18 U.S.C. § 3231. Rather, he challenges the venue in which sentencing took place. This question of law is reviewed *de novo*.

Article III of the Constitution provides: "Trial of all Crimes ... shall be held in the State where the said Crimes shall have been committed". U.S. CONST. art. III § 2 cl. 3. The Sixth Amendment limits the geographic scope even further, by providing that the accused shall have a "trial, by an impartial jury of the State *and district* wherein the crime shall have been committed". U.S. CONST. Amend. VI (emphasis added). Rule 18 provides, in

pertinent part, that "the government must *prosecute* an offense in a *district* where the offense was committed". FED. R. CRIM. P. 18 (emphasis added).

Avants' reliance on the Sixth Amendment is misplaced. First, there is no contention the jury was drawn from a constitutionally improper area; this requirement was satisfied. But, the Sixth Amendment is at issue for another reason: it guarantees "trial" by jury. Because, for this non-death penalty case, the jury did not participate in any respect in sentencing, this "trial" guarantee does not encompass sentencing in this instance. Similarly, the Article III requirement that "Trial ... be held in the State" where the crime was committed does not include the venue for sentencing.

That leaves Rule 18, which does not speak of a trial, but limits where the Government may "prosecute". For the following reasons, we need not decide whether sentencing is included in Rule 18's location of prosecutions. *But see* **Bradley v. United States**, 410 U.S. 605, 609-11 (1973) (interpreting the Comprehensive Drug Abuse Prevention and Control Act of 1970 and stating "sentencing is part of the prosecution"). Rule 18 is subject to Rule 52; Rule 52(a) provides that "[a]ny error ... that does not affect substantial rights must be disregarded". If there was error, it did not affect substantial rights. To the contrary, if the district court had not traveled to Texas, Avants would have stayed

in the facility there, without a judgment and unable to appeal.  He has not attempted to show otherwise.

III.

For the foregoing reasons, the judgment is

***AFFIRMED*.**