United States Court of Appeals
Fifth Circuit

**F I L E D**

**June 16, 2004**

Charles R. Fulbruge III
Clerk

I n the

# United States Court of Appeals
## for the Fifth Circuit

---

m 03-20792
Summary Calendar

---

RUTH A. SMITH,

Plaintiff-Appellant,

VERSUS

THE UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER AT HOUSTON,

Defendant-Appellee.

---

Appeal from the United States District Court
for the Southern District of Texas
m H-01-CV-1475

---

Before SMITH, DEMOSS, and STEWART,
    Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Plaintiff Ruth Smith appeals the denial of her motion to reopen following entry of summary judgment for defendant University of Texas Health Science Center at Houston ("UTHSCH"). Finding no error, we affirm.

I.

Since March 1999, Smith, who is black, has been employed by UTHSCH as a medicare officer. In May 2000, she was assigned to the

newly created Multi-Specialty Invoice Follow-Up Group as a Coordinator or team leader. The group was supervised by Mary McCullen, a white woman, who reported to Ryan Bien, a white man. Bien reported to Ira Berezowsky, the Director of Physicians' Business Services. Smith's performance ratings were consistently "Distinguished" or "Satisfactory."

On July 19, 2000, McCullen sent a memorandum to her coordinators stating that arriving late or leaving early would be a "written up" process. On September 29, 2000, Smith observed Rhonda Alfara, a black female employee, talking about personal matters on the telephone. Smith attempted to notify Alfara's coordinator, but that coordinator was not in the office. Instead, Smith notified McCullen, who talked to Alfaro. Alfaro then left for lunch but resumed talking on the phone when whe returned. Smith later saw McCullen and said, "The quiet was good while it lasted." McCullen told Smith, "You know you have the right to go over and ask any employee to get to work."

Later, McCullen announced to Smith and other employees that everyone could leave fifteen minutes early, because the department had collected over $5 million for the month. Smith stated, "Why are they talking about leaving early? They need to be made to spend the night to earn their check that they get on Friday." McCullen stated, "This is why I'm supervisor and Ruth is not."

McCullen called Smith into her office. Smith alleges that McCullen immediately started threatening and chastising Smith, shouting, "You better not do this no more. You better not do that." Smith said that she was only expressing an opinion and that she had the right to do so. McCullen replied by saying,

"Niggers don't have no rights." Smith asked McCullen to call Berezowsky, but McCullen refused. Smith asked that Dena Thurman, the Human Resources Manager, be called, but McCullen stated that Thurman was not there. Several other employees were summoned into McClellan's office to witness the events.

Smith then contacted Human Resources about the problems she had had with McCullen. On October 2, 2000, Bien asked Smith to give him the opportunity to resolve the situation without going to Berezowsky. On October 9, Smith advised Bien that she would resolve the case for an apology, a transfer, and a third party present for all dealings with McCullen. Bien said that he could not ask McCullen to apologize, and he began an investigation on October 11. Berezowski states that Bien conducted a thorough investigation and could find no support or corroboration for Smith's allegation against McCullen.

Smith contends that on October 3, she requested that Bien promote her to one of the two positions available for Analysts. Smith cites her deposition as evidence of her request. Her deposition, however, was taken on March 12, 2002, and thus could not evidence a request for a promotion that is alleged to have occurred almost six months thereafter. Instead, the district court concluded that the evidence indicated that had Smith requested a promotion during the time that UTHSCH was investigating her complaint.

The Analyst position requested at that time was one for which Smith was not qualified, in that it required computer skills that she did not possess. Furthermore, although Smith made oral requests for a promotion, she never made a formal application for that promotion or for other positions through Human Resources.

2

Smith also claims that she requested a transfer to another hospital operated by the University of Texas, but she never made a formal request for this transfer.

At Smith's request, she was transferred to another supervisor and reported directly to Bien. She contends that this was a demotion, because, although she retained her title as Medicaid Coordinator, she no longer supervised anyone. After two months of reporting to Bien, Smith requested and received twelve weeks' paid medical leave as a result of the stress she alleges she experienced on account of the September 29 incident.

Smith returned to work on March 5, 2001. She continued to report to Bien until a reorganization caused her to be assigned to a new supervisor, Jane Hughes. Smith states that she has a good working relationship with Hughes, has no complaint about her change in position, and still is employed at UTHSCH.

Smith claims that McCullen encouraged other employees to lodge grievances against her, and she provides unsworn statements and letters of other employees to the effect that she was helpful and had trained them well. Smith also avers that she has not received merit raises, promotions, or transfers since September 2000. The record reflects, however, that she received a merit raise in February 2001, and her salary increased after she filed her charge of discrimination.

## II.

Smith sued, making claims under title VII for (1) race discrimination, (2) racial harassment, (3) retaliation, and (4) constructive discharge, and under Texas common law for intentional infliction of emotional distress ("i.i.e.d."). The basis for her complaints were McCullen's alleged statement to her. She also claimed that Bien "poked fun" at her regarding her complaint and personal appearance and that Bien and Berezowsky failed properly to resolve her grievance, although the district court determined that UTHSCH had produced uncontradicted evidence that Smith had withdrawn her grievance twice and that there was no paperwork or evidence that she had formally reinstated her grievance.

Relying on claims of lack of smiles and greetings in the hallway and on Bien's communicating with her by e-mail, Smith asserts that various co-workers ceased speaking with her while the grievance was pending. She also complains of an alleged unfair write-up that resulted in her being placed on probation, but she acknowledges that she was never placed on probation.

After discovery, UTHSCH moved for summary judgment pursuant to FED. R. CIV. P. 56. Smith filed no response in the time allowed. In a memorandum and order, the district court gave a thorough analysis of the merits of Smith's claims, concluding that she had failed to raise a genuine issue of material fact on her title VII, race discrimination, hostile environment, retaliation, and constructive discharge claims and that her i.i.e.d. claim was barred by sovereign immunity. Accordingly, the court entered summary judgment.

Smith filed a "Motion to Reopen," alleging that her lawyer had failed to respond on her behalf and had misled her into believing that the response had been filed. The district court construed this as a motion under FED. R. CIV. P. 59(e) to alter or amend the judgment. The court granted the motion to the extent that it permitted Smith to file a response to the motion for summary judgment. After considering

Smith's response, the court once again provided a thorough analysis of her claims and denied the Motion to Reopen. Smith appeals *pro se*.

### III.

We review for abuse of discretion a decision to reconsider a summary judgment in light of new materials. We review *de novo* a decision that summary judgment was appropriate. *Ford Motor Credit Co. v. Bright,* 34 F.3d 322, 324 (5th Cir. 1994); *Fields v. City of South Houston, Tex.*, 922 F.2d 1183 (5th Cir. 1991). A motion under rule 59(e) "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Templet v. HydroChem Inc.*, 2004 U.S. App. LEXIS 7627, at *12 (5th Cir. Apr. 20, 2004) (citing *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)).

### A.
#### 1.

The district court held that Smith had failed to meet the requirements of a claim for discrimination under title VII because she had not shown an adverse employment action. As the court noted, only "ultimate employment decisions" are actionable under title VII. *See Bennett v. Total Minatome Corp.*, 138 F.3d 1053, 1060 n.10 (5th Cir. 1998) (citing *Mattern v. Eastman Kodak Co.*, 104 F3d 702, 707 (5th Cir. 1997).

The court first addressed Smith's claim that she had been denied a promotion, deciding that she had admitted that she had never formally applied for the promotion in question and that she did not possess the computer skills required for the job she allegedly sought. Therefore, Smith had failed to show that she was qualified for or actually put herself into consideration for the position.

The court then addressed Smith's contention that she had been denied a transfer. The court determined that Smith had not formally applied for the transfer and that there was no evidence that the denial of such a transfer would have been a change in job duties, conditions, or benefits of employment such that its denial constituted an adverse employment decision. The court ruled that neither of Smith's alleged employment decisions constituted an "adverse employment decision" actionable under title VII.

Assuming *arguendo* that one of these decisions had been an adverse employment action, the court noted that Smith had attempted to support her claim for discrimination under title VII by direct evidence in the form of her own testimony that McCullen made the alleged offensive racial comment. Assuming, for purposes of summary judgment, that McCullen did make that statement, the district court found that the comment was governed by this court's "stray remark" doctrine.

For a comment in the workplace to provide evidence of discrimination, it must, *inter alia,* be "made by an individual with authority over the employment decision at issue." *Patel v. Midland Mem. Hosp. & Med. Ctr.*, 298 F.3d 333, 343 (5th Cir. 2002), *cert. denied*, 537 U.S. 1108 (2003). The district court held that Smith had not presented evidence that McCullen had authority over the decisions of which Smith complains or that McCullen's comment was related to either decision.

In her appellate brief, Smith does no more than assert that she was denied a promotion and a transfer for which she was qualified, and does not address the issue of whether either

4

was an "adverse employment action" within the meaning of Fifth Circuit law. Nor does she assert that McCullen had authority over the decisions. Notwithstanding the likelihood that Smith has waived these issues on appeal, we have reviewed the record and the opinion of the district court and find no error.

2.

Smith claimed that she was subjected to a racially hostile work environment and was harassed on the basis of her race. The district court noted that to prevail on a hostile work environment claim, a plaintiff must show that conduct that was so "severe or pervasive" as to create an environment that a reasonable person would find hostile or abusive. *See Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 194 (5th Cir. 1996). The court decided that the only racially charged conduct for which Smith had submitted evidence was McCullen's alleged offensive statement.

The court held that although this single comment, if made, would have been offensive (and we certainly agree), it could not by itself constitute "severe" or "pervasive" conduct. Thus, Smith could not meet her burden to show conduct that was actionable under a title VII hostile environment theory. The district court also noted that Smith's other alleged instances of mistreatment, including that her co-workers did not smile at her in the hallway, that Bien and Berezowsky failed to resolve her grievance, and that Bien or others "poked fun at her" were not supported by the evidence, were too vague and speculative to support a claim, and were innocuous if they actually occurred.

The court concluded that the conduct Smith alleged did not constitute abusive behavior by UTHSCH and did not create a hostile work environment. Once again, aside from a recitation of her alleged facts and reiteration that she has suffered harassment, Smith's brief does not address the issue of whether the behavior was actionable under title VII. We find no error.

3.

Smith contends that after she complained of McCullen's comments and filed a grievance, UTHSCH engaged in unlawful retaliation. As we noted above, only ultimate employment decisions are actionable under title VII. Smith alleges that she was ostracized by her co-workers, that Bien and McCullen criticized and poked fun at her, that Bien and Berezowsky did not resolve her grievance, that Smith was unfairly "written up" and placed on probation, and that her past accomplishments had been diminished through lowered performance ratings.

The district court held that none of these was an ultimate employment decision sufficient to give rise to a cause of action. The court also noted that, as discussed above, the denial of a transfer to an identical position and a promotion for which Smith did not apply and was not qualified could not give rise to a cause of action under title VII.

Smith also claimed that McCullen coerced another employee into filing a false complaint against her. The court ruled that this contention was without any evidentiary support.

Finally, the court concluded that although the transfer of Smith to a position in which she did not supervise other employees could be an adverse employment action sufficient to establish a *prima facie* case of discrimination, Smith had provided no evidence to show that UTHSCH's proffered reasons of high employee turnover and poor employee relations were

5

pretextual. Once again, Smith's briefing is inadequate on this point. We find no error.

4.

The district court held that Smith's claim for constructive discharge was without merit because (1) Smith did not describe conditions such that a reasonable person would have felt compelled to resign, and (2) she is still employed at UTHSCH and currently has no complaints. Smith has not addressed this issue on appeal, so it is waived. Even absent waiver, there is no error.

B.

The district court dismissed Smith's claim for i.i.e.d. for want of subject matter jurisdiction, holding that the claim was barred by the state's sovereign immunity under the Eleventh Amendment. Alternately, the court held that the claim failed on the merits.

Smith does not address this issue in her opening brief on appeal. In her reply brief, she provides a discussion of intentional infliction of emotional distress but does not address sovereign immunity except to assert that UTHSCH did not raise sovereign immunity as a defense. Because we do not consider issues raised for the first time in a reply brief, *United States v. Avants*, 2004 U.S. App. LEXIS 7519, at *34 (5th Cir. Apr. 19, 2004), the matter is waived. "Although we liberally construe the briefs of *pro se* appellants, we also require that arguments must be briefed to be preserved." *Yohey v. Collins*, 985 F.2d 222, 225 (5th Cir. 1993) (quoting *Price v. Digital Equip. Corp.*, 846 F.2d 1026, 1028 (5th Cir. 1988) (citations omitted).

AFFIRMED.