**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**August 8, 2003**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 02-10840

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LEA SCOTT FULLWOOD,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Texas

Before KING, Chief Judge, and HIGGINBOTHAM and BARKSDALE, Circuit Judges.

RHESA H. BARKSDALE, Circuit Judge:

Primarily at issue are two points: (1) whether the Government's use of a summary witness on rebuttal constitutes reversible plain error; and (2) whether the district court clearly erred in enhancing defendant's sentence, pursuant to U.S.S.G. § 3B1.1(a), for his being "an organizer or leader of a criminal activity that ... was otherwise extensive". Although the conviction and sentence are **AFFIRMED**, we are concerned about application of these two points in cases of this type.

Lea Scott Fullwood was a farmer in Nolan County, Texas, who participated in farm assistance programs administered by the federal Farm Service Agency (FSA). To receive FSA crop disaster payments, he had to certify to the Nolan County FSA office each of the crops planted on his farms. He was also entitled to purchase, through independent crop insurance agents, multiple peril crop insurance reinsured by the Government. (The private insurers are reimbursed by the Federal Crop Insurance Corporation (FCIC) (managed by the Risk Management Agency (RMA)) for certain claims they pay to insured producers based on crop losses, as well as for portions of the producers' premiums, which are subsidized by the Government.)

In mid-1999, Fullwood was introduced to Darren Jeffrey, an insurance adjuster. Jeffrey offered to submit fraudulent appraisals for claims; in return, Jeffrey would receive kickbacks of five percent of the payments. Fullwood agreed and subsequently introduced Jeffrey to Fullwood's father and father-in-law (both farmers), advising them of the fraudulent scheme.

During 1999, Fullwood farmed cotton and grain sorghum. However, he did not plant all of the acreage he certified to the FSA county office or to Hargrove Insurance Company, through which he had obtained multiple peril crop insurance. (Hargrove Insurance Company is a broker for Fireman's Fund Insurance, which issued the

insurance.) For example, although Fullwood did not plant grain sorghum on two of his father-in-law's farms, he certified having done so. (To carry out this scheme, Fullwood's father-in-law executed a "cash lease agreement" between him and Fullwood, which Fullwood submitted to the FSA to establish the requisite interest in those farms.)

Fullwood then made fraudulent claims based on acreage he did not plant, both for crop disaster payments from the FSA and on the federally-reinsured Fireman's Fund policies. Fullwood claimed hail and excess precipitation damaged his cotton crop. In connection with these claims, he executed various cotton appraisals and production worksheets. (Jeffrey indicated that he had inspected certain fields and had taken samples, and that little cotton had remained. No such inspections were made.) At Fullwood's request, Jeffrey also performed bogus appraisals on Fullwood's grain sorghum crop; Fullwood submitted similar fraudulent claims asserting that drought had damaged that crop.

In executing the scheme, Fullwood made extensive use of the United States mail and private interstate carriers. Ultimately, he requested more than $310,000 and received approximately $235,000. (Certain amounts were withheld because Fullwood was under investigation.)

Fullwood was convicted of: conspiracy to commit mail fraud, violate the False Claims Act, and make false statements to the

3

Government, in violation of 18 U.S.C. §§ 371 & 2; making false statements to agencies of the United States, in violation of 18 U.S.C. § 287; mail fraud, in violation of 18 U.S.C. § 1341; and, making false statements in a matter within the jurisdiction of an agency of the United States, in violation of 18 U.S.C. § 1001. He was sentenced to 41-months' imprisonment and ordered to pay restitution of $235,000.

## II.

At issue is whether the district court: (1) abused its discretion in admitting expert testimony; (2) committed reversible plain error by allowing the Government to use a summary witness on rebuttal; and (3) committed clear error by imposing a four-level sentence enhancement for Fullwood's having been a leader or organizer of the criminal activity.

## A.

Pre-trial, Fullwood moved to exclude Dr. Brown's expert testimony, which was based on satellite imagery. After a hearing during the trial, just prior to Dr. Brown's testifying, the district court overruled Fullwood's objections.

Dr. Brown testified that, based upon satellite imagery, he could determine if fields had been vegetated, were without crops, or had been recently tilled or cultivated. His testimony was offered to show that satellite images of farms where Fullwood claimed to have planted certain crops revealed that the crops were

4

not planted on the dates claimed by Fullwood. Among other things, Dr. Brown testified that the farms allegedly leased from Fullwood's father-in-law had not been plowed and had remnants of a crop consistent with hay grazer, *not* grain sorghum (contrary to the certification).

The admission of expert testimony is reviewed for abuse of discretion. *E.g.*, **Seatrax, Inc. v. Sonbeck Int'l, Inc.**, 200 F.3d 358, 371 (5th Cir. 2000). The district court's role in determining admissibility of scientific testimony under FED. R. EVID. 702 is that of gatekeeper. *E.g.,* **Daubert v. Merrell Dow Pharmaceuticals, Inc.**, 509 U.S. 579 (1993). Rule 702 sets the admission standard:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The proponent has the burden of establishing, by a preponderance of the evidence, that the pertinent admissibility requirements are met. *See* FED. R. EVID. 104(a), cmt.

Even though Fullwood concedes "that the Government's expert witness was highly credentialed", he contends there was too great a gap between the premise of satellite imagery, as it relates to crop cultivation, and the conclusion reached by Dr. Brown that

5

certain crops were not planted.  He also takes issue with:  whether the testimony was within the area of expertise established; and the rate of error (five percent) as applied to the testimony.

Fullwood's contentions are conclusory and without merit.  In response to Fullwood's motion to exclude, the Government submitted a detailed response that provided a list of 16 articles, all published in peer-reviewed scientific journals, which demonstrated the general acceptance in the scientific community of the techniques used by Dr. Brown.  The Government also pointed out that the Eighth Circuit upheld the admission of Dr. Brown's testimony in a similar case.  *See **United States v. Larry Reed & Sons P'ship***, 280 F.3d 1212, 1215 (8th Cir. 2002).

At the hearing on the motion, Dr. Brown's *curriculum vitae* was admitted into evidence.  As Fullwood acknowledges, Dr. Brown's credentials are substantial (including a Ph.D. in horticulture and numerous publications).  Also, at that hearing, Dr. Brown testified:  the remote sensing technology he employs "has been around for several decades"; his techniques are used "[e]very day" by science, industry, and government; and there have been "hundreds of investigations that have been conducted, probably thousands", validating his methodology.

The Government satisfied its burden.  In short, there was no abuse of discretion.

6

B.

Fullwood next challenges the Government's use of a summary witness on rebuttal. For its last witness in its case-in-chief, the Government called the Special Agent in charge of the investigation for the USDA. That Special Agent testified both about conversations he had with Fullwood and Fullwood's father-in-law (Fullwood's co-defendant) and as a summary witness.

On rebuttal, the Government re-called that Special Agent as its last witness. The Special Agent was allowed to recap a significant portion of the testimony already introduced by the Government. Although Fullwood's father-in-law objected to this testimony as being outside the scope of rebuttal, Fullwood did not likewise object. (His father-in-law's objection was overruled.)

The district court instructed the jury that the testimony of a summary witness is not "in and of [itself] evidence or proof of any facts" but is used to explain and should be disregarded "to the extent ... [it is] not [an] accurate summar[y]". Along this line, Fullwood does *not* contend that the testimony was in any way inaccurate.

Because Fullwood did not object, we review only for plain error. *See* FED. R. CRIM. P. 52(b); *e.g.,* **United States v. Garcia-Flores**, 246 F.3d 451, 457 (5th Cir. 2001). This quite restrictive standard requires Fullwood to demonstrate a "clear" or "obvious" error that affected his substantial rights. **Id**. Even

7

then, we have discretion to correct the error and will generally not do so unless it "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings". *E.g.*, ***United States v. Calverley***, 37 F.3d 160, 164 (5th Cir. 1994) (en banc) (quotation omitted), *cert. denied*, 513 U.S. 1196 (1995).

The Government asserts that FED. R. EVID. 1006 allows the use of summary witnesses. It provides:

> The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at [a] reasonable time and place. The court may order that they be produced in court.

As the Government concedes, this rule does not specifically address summary witnesses or summarization of trial testimony. This omission is significant — "[p]lainly, th[e] rule does not contemplate summarization of live testimony presented in court". ***United States v. Castillo***, 77 F.3d 1480, 1499 n.36 (5th Cir.), *cert. denied*, 519 U.S. 868 (1996).

For complex cases, we have allowed summary witnesses in a limited capacity. *See* ***United States v. Bishop***, 264 F.3d 535, 547 (5th Cir. 2001), *cert. denied*, 535 U.S. 1016 (2002) (allowing IRS agent to testify as summary witness where summary had foundation in evidence already admitted and was accompanied by limiting instruction); ***United States v. Moore***, 997 F.2d 55 (5th Cir. 1993)

8

(permitting IRS agent to selectively summarize where facts fell within his expertise).

On the other hand, there are limits that may well have been exceeded here, because, as the final rebuttal witness, the Special Agent was allowed, without justification, to simply recap substantial portions of the Government's case-in-chief. The use of summary evidence serves an important purpose, but that purpose is not simply to allow the Government to repeat its entire case-in-chief shortly before jury deliberations. Moreover, there are obvious potential dangers associated with its use. *See, e.g., Castillo*, 77 F.3d at 1500 ("without good reason or real need, [summary witness testimony] unfairly allow[ed] one prosecution witness merely to repeat or paraphrase the in-court testimony of another"); *United States v. Johnson*, 54 F.3d 1150 (4th Cir.)(summary witness testimony inappropriate in normal case given inherent dangers, including confusion), *cert. denied*, 516 U.S. 903 (1995); *United States v. Baker*, 10 F.3d 1374, 1412 (9th Cir. 1993) (summary witness should only be allowed in "exceptional cases" because the credibility of summary witness may be substituted for the credibility of the evidence summarized), *cert. denied*, 513 U.S. 934 (1994).

In the light of this case having some arguable complexity, our precedent allowing such testimony in complex cases, the limiting instruction given, and the unchallenged accuracy of the testimony,

9

the summary testimony did not constitute reversible plain error. *Cf.* **Castillo**, 77 F.3d at 1500 (no *reversible* error where summary witness "did not misstate or put an unfair 'spin' on the testimony he repeated or paraphrased, and it was uncontradicted"); **United States v. Okoronkwo**, 46 F.3d 426, 435 (5th Cir.)(use of summary witness not reversible error where merely cumulative of substantive evidence), *cert. denied*, 516 U.S. 833 (1995); **United States v. Winn**, 948 F.2d 145, 157-58 (5th Cir. 1991) (use of summary chart and testimony not reversible error where prejudice neutralized by instruction), *cert. denied*, 503 U.S. 976 (1992). Even assuming the admission of the summary testimony was clear or obvious error, the error did not affect Fullwood's substantial rights.

Nevertheless, in the light of the above-described dangers and the seemingly increased use of such witnesses by the Government, we strongly caution, *once again*, against use of summary witnesses in this fashion, especially in a non-complex case. While such witnesses may be appropriate for summarizing voluminous records, as contemplated by Rule 1006, rebuttal testimony by an advocate summarizing and organizing the case for the jury constitutes a very different phenomenon, not justified by the Federal Rules of Evidence or our precedent. For example, summary witnesses are not to be used as a substitute for, or a supplement to, closing argument.

C.

Finally, Fullwood challenges the four-point enhancement he received, pursuant to U.S.S.G. § 3B1.1, for being an organizer or leader of the criminal activity. The presentence investigation report (PSR) recommended the enhancement on the basis that Fullwood was an organizer or manager in a criminal activity that, consistent with the language of § 3B1.1, *was otherwise extensive*. Over Fullwood's objection, the district court imposed the enhancement, finding Fullwood "did manage or supervise others in regard to this commission of this offense, particularly in regard to his father-in-law[,] his father[,] and also as to the adjustor...."

The pertinent portion of § 3B1.1 states:

> Based on the Defendant's role in the offense, increase the offense levels as follows:
>
> > (a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants *or was otherwise extensive*, increase by 4 levels.

(Emphasis added.)

> In assessing whether an organization is "otherwise extensive," *all persons involved during the course of the entire offense* are to be considered. Thus, a fraud that involved only three participants *but used the unknowing services of many outsiders* could be considered extensive.

U.S.S.G. § 3B1.1, cmt. n.3 (emphasis added). Fullwood claims the enhancement was improper because his criminal activity did not

11

involve the requisite five participants and was not "otherwise extensive".

The application of § 3B1.1 is a factual finding reviewed only for clear error. *E.g., United States v. Cabrera*, 288 F.3d 163, 173 (5th Cir. 2002). "A factual finding is not clearly erroneous as long as it is plausible in the light of the record as a whole." *United States v. Powers*, 168 F.3d 741, 752 (5th Cir.) (internal quotation and citation omitted), *cert. denied*, 528 U.S. 945 (1999).

The Government does not contend the offense involved five or more persons. Instead, as recommended by the PSR, it maintains the enhancement is justified because Fullwood was the leader or organizer of criminal activity that "was otherwise extensive". Along this line, the Government points to the involvement of Jeffrey (the appraiser), Fullwood's father and father-in-law, and the following unwitting participants: USDA; RMA; FCIC; FSA; FSA, Nolan County Office; Rayford Hargrove (insurance agent); Hargrove Insurance Company; Fireman's Fund Insurance Company; the United States Postal Service; and private interstate carriers.

In the light of the use of these unknowing participants, the "otherwise extensive" application was not clearly erroneous. *United States v. Davis*, 226 F.3d 346, 360 (5th Cir. 2000)*, cert. denied*, 531 U.S. 1181 (2001), held that applying the § 3B1.1(a) enhancement was not clearly erroneous because of the involvement of unwitting accomplices where the defendant operated "an advance-fee

12

scheme in which he would agree to obtain funding for clients, but would never do so". *Id*. at 348-49.  There, the scheme involved employees of a financial company, loan brokers, lawyers, and those providing "due diligence" reports. *Id*.  *See also* **United States v. Sidhu**, 130 F.3d 644 (5th Cir. 1997) (§ 3B1.1 applied to physician involved in healthcare fraud where patients and insurance company's employees were unknowing participants); **United States v. Allibhai**, 939 F.2d 244, 253 (5th Cir. 1991), *cert. denied*, 502 U.S. 1072 (1992) (§ 3B1.1 applied to scheme involving only four participants that used services of outsiders such as bank employees).  The use of unsuspecting participants was similarly extensive here. Application of the enhancement on that basis was not clearly erroneous.

Fullwood also maintains, quite conclusionally, that his role was not one of leader or organizer.  The factors to be considered are:  (1) exercise of decision-making authority; (2) nature of participation in the commission of the offense; (3) recruitment of accomplices; (4) claimed right to a larger share of the fruits of the crime; (5) degree of participation in planning or organizing; (6) nature and scope of the illegal activity; and (7) degree of control or authority exercised over others. U.S.S.G. § 3B1.1, cmt. n.4.

Fullwood:   chose which false claims to submit; prepared, signed, and submitted those claims; introduced Jeffrey to his

13

father and father-in-law, presumably to bring them in on the scheme; took 95 percent of the profits (all but the five percent kickback); and, as stated, utilized the services of countless outsiders. Finding him to be a leader or organizer was not clearly erroneous.

We caution, however, that this case arguably comes close to the lower limits, for § 3B1.1 purposes, for what constitutes an organizer or leader of criminal activity that was otherwise extensive. The enhancement is designed to assign greater punishment to those engaged in leading criminal enterprises, in part because of concerns about relative responsibility. *See* U.S.S.G. § 3B1.1 cmt. It is to be imposed against defendants who tend to profit more from criminal enterprises, pose a greater danger to the public, and are more likely to recidivate. *Id*. Obviously, it is not a plea bargaining tool; likewise, it is not to be applied automatically.

## III.

For the foregoing reasons, Fullwood's conviction and sentence are

*AFFIRMED*.

14