# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 8, 2010

Lyle W. Cayce
Clerk

No. 08-20323

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ANGELA ARMSTRONG, Also Known as Angie Armstrong;
DEBBIE RAMCHARAN,

Defendants-Appellants.

———————————————

Appeals from the United States District Court
for the Southern District of Texas

———————————————

Before SMITH, WIENER, and ELROD, Circuit Judges.
JERRY E. SMITH, Circuit Judge:

Angela Armstrong and Debbie Ramcharan appeal their convictions of engaging in monetary transactions in property derived from specified unlawful activity, conspiracy, and aiding and abetting mail fraud. They argue that the jury instructions were inappropriate, that the district court erred by allowing the gov-

ernment's summary witness to testify, and that the court improperly admitted several exhibits into evidence. Because there is no reversible error, we affirm.

## I. Facts and Procedural History.

Between 1996 and 2002, defendants participated in a large-scale insurance fraud pursuant to which those participating in the fraud intentionally flooded over fifty homes and a commercial building. They then filed false reimbursement claims on their flood insurance policies, in some cases claiming reimbursement for repairs they had completed themselves. In other cases, they would contract for repairs by companies controlled by other members of the conspiracy, who inflated their bills. In addition, the members of the fraud removed the homeowner's furniture before the flooding and moved in a set of already flood-damaged furniture. Each defendants' participation in the scheme included acting once as the "victim" of a flood. Armstrong also worked for three of the companies that contracted to repair the damage, personally spoke with various insurance adjusters in this capacity, and participated in inflating invoices.

Because the conspirators filed claims with different insurance companies, the fraud continued undetected for seven years. Eventually, however, fraud investigators for Farmers Insurance became suspicious of two similar claims. They reported the suspicious activity to the Texas Department of Insurance, whose subsequent investigation uncovered the scheme, which had defrauded insurance companies of $5.4 million.

Defendants were charged with one count of conspiracy to commit mail fraud in violation of 18 U.S.C. § 371; five counts of aiding and abetting mail fraud in violation of 18 U.S.C. §§ 1341-1342; four counts of engaging in monetary transactions in property derived from specified unlawful activity in violation of 18 U.S.C. § 1957(a); and one count of conspiracy to engage in monetary transactions in property derived from specified unlawful activity in violation of 18

U.S.C. § 1956(h).  They were tried jointly.

At trial, the government called insurance company representatives to testify about the claims filed by the group of conspirators.  The government submitted as evidence many of the claim files, including the adjusters' logs of each claim.  The government also offered the testimony of Jan Tarpley, a postal inspector, as a summary witness, and a summary chart prepared by Kathy Anderson, an FBI financial analyst (Exhibit 161).  The jury found defendants guilty of nine of the ten counts, including conspiracy to commit mail fraud, aiding and abetting mail fraud, engaging in monetary transactions in property derived from specified unlawful activity, and conspiracy to engage in monetary transactions in property derived from specified unlawful activity.

## II.  Discussion.

### A.  Admission of Government's Exhibit 161.

Ramcharan argues that the court improperly admitted Exhibit 161 as a summary chart under Federal Rule of Evidence 1006.  We review the admission of evidence, including summaries and summary testimony, for abuse of discretion. *United States v. Harms*, 442 F.3d 367, 375 (5th Cir. 2006).  If there is error, it is "excused unless it had a substantial and injurious effect or influence in determining the jury's verdict." *Id.* (internal quotatoin marks omitted).

Exhibit 161 is titled "Debbie Ramcharan, Occurrences totaling $1,576,239.79, 2/18/2000-3/28/2001."  It includes a photo of Ramcharan surrounded by pictures of seven different properties that were flooded by the conspirators.  Lines connect Ramcharan's photo to three of the pictures, indicating her involvement in the scheme to flood those particular properties.  All the information summarized in the chart was already before the jury.

Rule 1006 provides that "[t]he contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation."  Fifth Circuit precedent

3

conflicts on whether rule 1006 allows the introduction of summaries of evidence that is already before the jury, or whether instead it is limited to summaries of voluminous records that have not been presented in court.[1] We need not resolve that conflict, however, because even if summaries of information already before the jury, such as Exhibit 161, are inadmissible, the admission of Exhibit 161 was harmless error.

Ramcharan argues that Exhibit 161 had a "substantial and injurious effect or influence," *Harms*, 442 F.3d at 375, for two reasons. First, she professes that the exhibit drew an inappropriate inference from the underlying evidence by implying that Ramcharan was criminally liable for all the properties in the chart, but the evidence connected her to only four of them. The presence of an inference itself is not prejudicial, for under rule 1006, "'[t]he essential require- ment is not that the charts be free from reliance on any assumptions, but rather that these assumptions be supported by evidence in the record.'" *Buck*, 324 F.3d at 791 (citing *United States v. Diez*, 515 F.2d 892, 906 (5th Cir. 1975)). Moreov- er, Exhibit 161 did not suggest any conclusions unsupported by the evidence. The witness who prepared the exhibit clarified in her testimony, on direct and cross-examination, that Ramcharan had a connection only to the properties that had a line drawn to her picture. Thus, there was no reason for the jury to be- lieve that she was connected to the other properties as well.

Second, Ramcharan contends that admitting Exhibit 161 may have bol-

---

[1]*Compare United States v. Bishop*, 264 F.3d 535, 547-48 (5th Cir. 2001) (allowing intro- duction of summary charts that prosecutors "based . . . on testimony and documentary evi- dence presented to the jury"), *and United States v. Stephens*, 779 F.2d 232, 238-39 (5th Cir. 1985) (stating that the language of rule 1006 extends to summaries of writings that have been presented in court), *with United States v. Buck*, 324 F.3d 786, 790 (5th Cir. 2003) ("Th[e] use of summaries [allowed under rule 1006] should be distinguished from charts and summaries used only for demonstrative purposes to clarify or amplify argument based on evidence that has already been admitted. . . . Although some Courts have considered such charts and sum- maries under Rule 1006, the Rule is really not applicable because pedagogical summaries are not evidence. Rather, they are demonstrative aids governed by Rules 403 and 611" (quoting 5 STEPHEN A. SALTZBURG ET AL., FEDERAL RULES OF EVIDENCE MANUAL § 1006.02[5], at 1006-6 (8th ed. 2002))).

stered the credibility of the witnesses testifying to the underlying evidence. That argument fails, however, because the court made plain to the jury that it should consider the exhibit only as an aid in understanding the other evidence. Immediately after admitting Exhibit 161, the court commented:

> I remind the jury that this is among those summary charts that we talked about yesterday. This chart is not independent evidence. It is admitted to assist in summarizing other evidence. If you find that the exhibit does not accurately or correctly summarize the evidence that has been otherwise established, you should disregard it to that extent, and give it only the weight that you think it deserves.

The final jury instructions included a similar comment. Those instructions dispelled any danger that the jury would give weight to Exhibit 161 as substantive evidence or to bolster credibility. Thus, the admission of Exhibit 161, if error, was harmless.

## B. Admission of Insurance Adjuster's Logs.

Ramcharan challenges the admission of the insurance adjusters' logs on grounds of hearsay and authentication. That objection was not made at trial, so we review the issue only for plain error. *United States v. Avants*, 367 F.3d 433, 443 (5th Cir. 2004).

To the extent that Ramcharan argues that the logs themselves did not qualify for the "business records" exception to the hearsay rule, *see* Federal Rule of Evidence 803(6), she is incorrect. At times, she appears to claim that the accuracy of the contents of the logs was not affirmed by the insurance claims agents who introduced them. But "[t]here is no requirement that the witness who lays the foundation be the author of the record or be able to personally attest to its accuracy." *United States v. Brown*, 553 F.3d 768, 792 (5th Cir. 2008), *cert. denied*, 129 S. Ct. 2812 (2009). Rather, a "qualified witness is one who can explain the record keeping system of the organization and vouch that the requirements of Rule 803(6) are met." *Id.* The relevant witnesses plainly met

those requirements.

More particularly, Ramcharan objects to the portion of the logs that re-corded phone calls from Ramcharan to one of the insurance adjusters. She main-tains that the statements by the caller in the logs were hearsay and inadmissible under the "hearsay within hearsay" rule. FED. R. EVID. 805. That argument fails, however, because the statements by the caller were not offered for the truth of the matter asserted and thus are not hearsay. *See* FED. R. EVID. 801(c). Rather, the government offered the statements to prove that Ramcharan had contacted the insurance companies in regard to particular claims and was thus aware of the flooding of the properties––that is, to prove the identity of the caller.

Ramcharan contends that the adjuster's identification of the caller as Ramcharan is insufficient to prove identity, particularly where the conspirators frequently concealed or modified their identities. That argument is correct, but it should have been made to the jury. The call logs were some evidence that Ramcharan was the caller, and the jury was free to consider them as such.

## C. Testimony of the Summary Witness.

Defendants argue that the court erred when it allowed Postal Inspector Jan Tarpley to testify as a summary witness for the government. Because de-fendants objected to Tarpley's testimony, we review its admission for abuse of discretion. *Avants,* 367 F.3d at 443.

Although this court allows summary witness testimony in "limited circum-stances" in complex cases, we have "repeatedly warned of its dangers." *United States v. Nguyen*, 504 F.3d 561 (5th Cir. 2007). "While such witnesses may be appropriate for summarizing voluminous records, as contemplated by Rule 1006, rebuttal testimony by an advocate summarizing and organizing the case for the jury constitutes a very different phenomenon, not justified by the Federal Rules of Evidence or our precedent." *United States v. Fullwood*, 342 F.3d 409, 414 (5th

Cir. 2003). In particular, "summary witnesses are not to be used as a substitute for, or a supplement to, closing argument." *Id.*

To minimize the danger of abuse, summary testimony "must have an adequate foundation in evidence that is already admitted, and should be accompanied by a cautionary jury instruction." *Bishop*, 264 F.3d at 547. Moreover, "[f]ull cross-examination and admonitions to the jury minimize the risk of prejudice." *Id.*

Here the evidence—involving numerous witnesses, technical testimony, and scores of exhibits—has sufficient complexity to justify use of a summary witness. Nothing in the record suggests that Tarpley's testimony went beyond summarizing the evidence already in the record,[2] and Tarpley was subject to extensive cross-examination. Moreover, even though the court's instructions did not explicitly address summary testimony, they did warn the jury generally not to take summaries as substantive evidence. Thus, the district court did not abuse its discretion by allowing the use of this summary witness.

## D. Insurance Claim Files with Colored Flags.

Armstrong avers that the district court inappropriately allowed the government to attach colored flags to the claim files that were admitted into evidence. Because counsel objected, this court's review is for abuse of discretion. *See Avants*, 367 F.3d at 443. Armstrong's argument rests on the assertion that the flags improperly bolstered the evidence by attempting to convey the preparer's opinion about certain pieces of evidence.[3] It was evident to the jury, how

---

[2] The only possible exception is Tarpley's testimony on redirect about what she "surmised" after reading the individual claim files. Ramcharan cannot rightly complain about that testimony, however, because her counsel opened that line of inquiry. *Cf. United States v. Carey*, 589 F.3d 187, 193-94 (5th Cir. 2009).

[3] *Cf. United States v. Price*, 722 F.2d 88, 90 (5th Cir. 1983) (warning against allowing testimony bolstering the credibility of a witness to "suggest[] to the jury that it may shift to
(continued...)

ever, that the tabs were merely organizational aids. The court stated as much in its final charge to the jury, which read,

> Some of the claim files admitted into evidence are voluminous and have color-coded tabs as an organizational aid. These tabs simply serve to identify certain parts of the files, to aid in locating parts of the files that may have been mentioned or shown to you during the testimony. You are instructed that the tabs and their placement are not evidence. You are also instructed that the existence of the tabs does not mean that you should disregard or give less consideration to other parts of the exhibits that have been admitted into evidence. Whether the color-coded tabs correctly reflect the type of entry indicated by their color is for you to determine, based on your own examination of the exhibits and the testimony you have heard.

This instruction leaves no possibility that the jury misinterpreted the tabs, and it shows that the court did not abuse its discretion in admitting them.

### E. Jury Instructions.

Defendants' final three issues on appeal relate to the propriety of the jury instructions. They argue that the court erred in its *Pinkerton* instruction and its instruction regarding conspiracy to commit mail fraud. Armstrong alone additionally challenges the instruction regarding conspiracy to engage in monetary transactions in property derived from specified unlawful activity. Because none of these objections was raised at trial, we review them for plain error. *See United States v. Phillips*, 477 F.3d 215, 221 (5th Cir. 2007).

First, defendants say that the instruction for conspiracy to commit mail fraud failed to include the substantive elements of mail fraud. That argument is frivolous, however, because the substantive elements were included in a separate instruction regarding the count for mail fraud. Thus, "looking to the entire charge," *United States v. Chagra*, 807 F.2d 398, 402 (5th Cir. 1986), it is evident

---

[3](...continued)
a witness the responsibility for determining the truth of the evidence").

that the jury was properly instructed as to the elements of mail fraud, and there was no error, plain or otherwise.

Second, Armstrong argues that the instruction regarding conspiracy to engage in monetary transactions in property derived from specified unlawful activity was plain error because it did not mention the statute's requirement that the criminally derived property be valued over $10,000. That contention is similarly frivolous, because the $10,000 requirement was included in the instruction regarding the substantive crime of engaging in monetary transactions in property derived from specified unlawful activity. Thus, that requirement was properly before the jury, and there is no error.

Next, defendants maintain that the *Pinkerton* instruction was improper. "[U]nder the *Pinkerton* doctrine, a defendant can be found liable for the substantive crime of a coconspirator provided the crime was reasonably foreseeable *and* committed in furtherance of the conspiracy."[4] The jury, however, was told that it should impose *Pinkerton* liability if it found that "the offense was committed in furtherance of *or* as a foreseeable consequence of the conspiracy." Despite this discrepancy, the jury instruction tracked exactly this circuit's pattern jury instruction for *Pinkerton* liability,[5] which we have previously held to state the law correctly.[6] There was no error in this part of the instruction.

Finally, defendants argue that the *Pinkerton* instruction improperly stated that it was applicable to "the offenses charged in any of the subsequent counts," including the count charging conspiracy to engage in monetary transactions in

_____

[4] *United States v. Gonzalez*, 570 F.3d 16, 26 n.8 (5th Cir. 2009) (emphasis added) (alteration in original) (citation omitted).

[5] *See Pattern Jury Instructions: Fifth Circuit, Criminal Cases*, § 2.22.

[6] *United States v. Thomas*, 348 F.3d 78, 85 (5th Cir. 2003); *see also United States v. Dean*, 59 F.3d 1479, 1490 n.18 (5th Cir. 1995) ("[A]t a minimum, a proper *Pinkerton* instruction should at least state clearly that the defendant can be convicted of a substantive crime committed by his co-conspirator in furtherance of the conspiracy" (citation omitted)).

property derived from specified unlawful activity. But *Pinkerton* liability attaches only to substantive crimes, not to other conspiracies. Defendants are correct that the jury charge should have been more specific about the counts to which *Pinkerton* liability applied.

Nonetheless, the problems with the instruction do not amount to plain error. To be reversible, plain error must affect the defendant's substantial rights, and even then, we have discretion not to reverse a conviction unless "the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *United States v. Cotton*, 535 U.S. 625 (2002) (alteration in original) (citation omitted). These defendants' substantial rights were not affected, because the prosecutor made it plain in closing argument that *Pinkerton* liability applies only to substantive crimes. Because this court "review[s] claimed deficiencies in a jury charge by looking to the entire charge as well as the arguments made to the jury" to determine "whether in the context of the true trial scene the jury was given incorrect instructions," the prosecutor's explanation was sufficient to cure any harm that might have been caused by the deficient instruction.

The convictions are in all respects AFFIRMED.