# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-41229

United States Court of Appeals
Fifth Circuit

**FILED**

February 27, 2017

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

versus

THOMAS LUCAS, JR.,

Defendant–Appellant.

Appeal from the United States District Court
for the Eastern District of Texas

Before JOLLY, SMITH, and HIGGINSON, Circuit Judges.
JERRY E. SMITH, Circuit Judge:

Thomas Lucas, Jr., appeals his conviction on seven counts of wire fraud and one count of making false statements to an FBI agent. Lucas claims error in two evidentiary rulings and the denial of a new trial. We find no reversible error and affirm.

No. 15-41229

I.

Lucas was an employee of the Harry B. Lucas Company, a real estate investment business that had been founded by his grandfather and was run by Lucas's father and two uncles.  In 2005, Lucas initiated a fraudulent real estate investment scheme through the company after he returned from a bachelor party claiming to have information about a business opportunity.  Lucas alleged his high school friend Robbie Marks, Marks's brother-in-law, and other attendees had told him of the Walt Disney Company's plans to build a theme park near Celina, in North Texas.

Upon receiving that information from Lucas, the Harry B. Lucas Company hired additional sales employees, who were required to sign non-disclosure agreements and were told of the secret Disney development.  The company then began purchasing land where the entrance to the theme park was supposedly to be.  Additional investors were recruited through presentations made by Lucas, who was the sole source of the company's information.  The presentations were made using a laptop and a binder that contained the fabricated plans.  The attendees were also required to sign non-disclosure agreements, and Lucas maintained throughout the presentations that a "life-long friend" was the source of the information.

Over time, the information and documentary evidence that Lucas claimed to have of the development and presented to potential investors expanded.  He offered fake letters allegedly exchanged between the Chairman of Walt Disney Parks and Resorts, Jay Rasulo, and the company supposedly handling Disney's land acquisition efforts.  Lucas claimed the development was to include several theme parks, a water park, a new airport, a maglev train, hotels, villas, sports facilities, and a shopping mall.  He had elaborate park maps, floor plans, and mockups of the facilities.

The scheme began to unravel when it came time for Disney to announce the project. Lucas informed his investors of a series of announcement dates, none of which, of course, occurred. Lucas attempted to calm the rising fears over the missed dates by distributing a fake memo from Disney CEO Bob Iger setting the announcement for October 1, 2008, along with a photo of Rasulo practicing his announcement speech. That announcement also inevitably failed to occur, leading Lucas to invent another excuse—that Rasulo's family had been injured in a car accident.

Lucas's scheme was ultimately undone through investigations by the investors themselves. They were able to find, online, the photo that Lucas claimed to be of Rasulo practicing his announcement speech; they discovered it was really a modified image of Rasulo speaking at Disneyland's fiftieth birthday party. At trial, Rasulo confirmed that the photo was taken at the birthday party, that Disney never planned to open such a development in North Texas, and that there was no car accident.

In the meantime, the identity of Lucas's source had been evolving from the original "lifelong friend" to more distant acquaintances, all of whom denied providing Lucas with any information about a Disney development in North Texas. During the FBI investigation into the scheme, Lucas told Special Agent Richard Velasquez in September 2014 that his source was Michael Watson, Sr., who Lucas claimed was both a lifelong friend a person he had met for the first time at the 2005 bachelor party. According to Lucas, Watson leaked the Disney information to him using burner phones and operated as a go-between for a Disney employee named Tyson.

Watson was not supplying Lucas with any information but, instead, was an acquaintance he made at a methadone clinic they were attending. In 2011, Watson had moved back to Louisiana, where he had lived before Hurricane

3

No. 15-41229

Katrina, and committed suicide. Watson's common-law wife testified that he had no connection to Disney or to a company buying land for Disney and that he had never shared such information with her. About 280 people had invested $47 million based on the fraudulent Disney information, resulting in a loss of over $19.6 million.

Lucas was convicted on seven counts of wire fraud under 18 U.S.C. § 1343 for payments wired as part of the scheme and on one count of making false statements to the FBI under 18 U.S.C. § 1001. He was sentenced to 210 months' imprisonment.

## II.

Lucas asserts that the evidence that he met Watson at a methadone clinic was improperly admitted under Federal Rule of Evidence 404(b). The government put on evidence that Lucas had to obtain a waiver from the methadone clinic to attend Watson's funeral. Lucas objected to that evidence in a motion *in limine* but did not renew the objection at trial. In his motion, Lucas stated that "[s]uch testimony is not relevant, constitutes an inadmissible bad act not resulting in a conviction and is highly prejudicial to Defendant."

The parties dispute whether that motion properly preserved the objection for appeal. The government argues it was not preserved, because the objection offered insufficiently specific grounds, the district court's ruling on the motion was not definitive, and the objection was not renewed at trial. We disagree.

## A.

Lucas preserved the objection, and we review it for abuse of discretion. *United States v. Morgan*, 505 F.3d 332, 339 (5th Cir. 2007). Lucas was not required to renew his objection to the methadone evidence at trial. Federal

4

No. 15-41229

Rule of Evidence 103(b) states that "[o]nce the court rules definitively on the record—either before or at trial—a party need not renew an objection or offer of proof to preserve a claim of error for appeal."  A pretrial motion *in limine*, objecting to the evidence, is enough.  *Mathis v. Exxon Corp.*, 302 F.3d 448, 459 (5th Cir. 2002).

The motion *in limine* also satisfied Rule 103(a)(1)(B)'s specificity requirement.  A party has preserved error in the admission of evidence if his objection "states the specific ground, unless it was apparent from the context . . . ."  FED. R. EVID. 103(a)(1)(B).  A Rule 404(b) objection is sufficiently specific if it is to "incidents that occurred at work, not crimes that he's ever been convicted of" and that was acknowledged by the district court as a Rule 404(b) objection. *United States v. Mireles*, 442 F. App'x 988, 994 (5th Cir. 2011) (per curiam).

Lucas's objection stated that the methadone evidence "constitutes an inadmissible bad act not resulting in a conviction and is highly prejudicial to Defendant."   He included no citation to the rule, but the language is a direct reference to Rule 404(b)'s prohibition on "[e]vidence of a crime, wrong, or other act" that is used "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  FED. R. EVID. 404(b).

Furthermore, we have used the similar language of "prior bad acts" to describe the type of evidence that is barred by Rule 404(b).  *See, e.g.*, *United States v. Clark*, 582 F.3d 607, 616 (5th Cir. 2009).  Lucas's counsel's statement also alerted the government that a Rule 404(b) objection was being asserted, because the government's response referred to the rule.  Lucas's reference to "inadmissible bad act[s]" was sufficient to make his Rule 404(b) objection "apparent from the context."  FED. R. EVID. 103(a)(1)(B).

No. 15-41229

B.

It was not an abuse of discretion to admit the evidence that Lucas met Watson at a methadone clinic, because it was not subject to the prohibitions of Rule 404(b). Only extrinsic evidence is inadmissible under Rule 404(b). *United States v. Williams*, 900 F.2d 823, 825 (5th Cir. 1990). "Evidence of other acts is intrinsic 'when the evidence of the other act and the evidence of the crime charged are inextricably intertwined or both acts are part of a single criminal episode or other acts were necessary preliminaries to the crime charged.'" *United States v. Miranda*, 248 F.3d 434, 440 (5th Cir. 2001) (quoting *Williams*, 900 F.2d at 825). In *Miranda*, we held that evidence of prior drug transactions was admissible because it was "background information establishing the connection between a witness and a defendant" in prosecutions for the possession and distribution of illegal drugs. *Id.* at 441.

This is precisely the purpose of admitting evidence that Lucas met Watson at a methadone clinic and had requested permission from the clinic to attend Watson's funeral. The true nature of the relationship that Lucas had with the person he claimed to be his source for the Disney information was "inextricably intertwined" with the fraudulent scheme. Rule 404(b) is inapplicable to the methadone evidence, so it was not an abuse of discretion to admit it.

III.

Lucas also appeals the denial of his motion for a new trial based on newly discovered evidence. After trial, Lucas discovered evidence that several hundred thousand dollars in the real estate partnerships overseen by his uncle, Beau Lucas, was unaccounted for. He also found that a payment had been made from the partnership to Jon Konack, a government witness and victim of Lucas's fraudulent scheme. Beau Lucas had exclusive control of those financial records, and the unaccounted-for funds were not discovered until a review of

No. 15-41229

the partnership after he died.

"We review the denial of a motion for new trial on the basis of newly discovered evidence exclusively for an abuse of discretion." *United States v. Gresham*, 118 F.3d 258, 267 (5th Cir. 1997). "In this Circuit, the generally accepted standard is that a new trial ordinarily should not be granted 'unless there would be a miscarriage of justice or the weight of evidence preponderates against the verdict.'"[1]  "[T]he defendant must prove (1) that the evidence is newly discovered and was unknown to him at the time of trial; (2) that the failure to discover the evidence was not due to his lack of diligence; (3) that the evidence is not merely cumulative, but is material; and (4) that the evidence would probably produce an acquittal." *Gresham*, 118 F.3d at 267.

Lucas claims the district court was wrong to find that he had done insufficient due diligence to uncover the new evidence.  But the court actually found that Lucas had failed to provide enough evidence that he had done the requisite due diligence at all.  That Beau Lucas was in exclusive control of the partnership records does not excuse Lucas from the burden of explaining to the court the steps he took to attempt to obtain the information.

Furthermore, this new evidence is also immaterial to Lucas's convictions and would be highly unlikely to lead to an acquittal.  Evidence is material where it "greatly strengthen[s] the defendant's argument" that another person committed the crime, but Lucas has not shown that here.  *United States v. Piazza*, 647 F.3d 559, 569–70 (5th Cir. 2011).  Even assuming this new information is evidence of Beau Lucas's involvement, his participation does not undermine the conclusion that Lucas was involved in the scheme.  It was not

---

[1] *United States v. Wright*, 634 F.3d 770, 775 (5th Cir. 2010) (quoting *United States v. Wall*, 389 F.3d 457, 466 (5th Cir. 2004)); *see also* FED. R. CRIM. P. 33.

No. 15-41229

an abuse of discretion to deny Lucas a new trial on these bases. *See Gresham*, 118 F.3d at 267.

IV.

Lucas objects to the admission of portions of his deposition testimony, from the related civil case, through the summary-evidence testimony of a government agent. Lucas concedes that he did not object to the introduction of his deposition testimony in this hybrid manner, so we review only for plain error. *United States v. Fullwood*, 342 F.3d 409, 413 (5th Cir. 2003); FED. R. CRIM. P. 52(b).

> There are four requirements that must be satisfied to justify reversal under our plain error analysis: (1) there must be an error or deviation from an established legal rule; (2) the error must be clear or obvious and not subject to reasonable dispute; (3) the error affected the defendant's substantial rights; and (4) if the first three requirements are satisfied, the court of appeals retains the discretion to correct the error and will do so only when it "seriously affect [s] the fairness, integrity or public reputation of judicial proceedings."

*United States v. Segura*, 747 F.3d 323, 327 (5th Cir. 2014) (quoting *United States v. Escalante-Reyes*, 689 F.3d 415, 426 (5th Cir. 2012) (en banc)). "Reversing a district court for plain error should be 'rare.'" *United States v. Brown*, 826 F.3d 835, 841 (5th Cir. 2016) (citation omitted).

A.

Federal Rule of Evidence 1006 allows the "use [of] a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court." FED. R. EVID. 1006. "[T]his rule does not specifically address summary witnesses or summarization of trial testimony. . . . 'Plainly, th[e] rule does not contemplate summarization of live testimony presented in court.'" *Fullwood*, 342 F.3d at 413 (quoting *United States v. Castillo*, 77 F.3d 1480, 1499 n.36 (5th Cir. 1996)). But "[f]or

complex cases, we have allowed summary witnesses in a limited capacity." *Id.* Under our precedents, the rule allows the summarization of voluminous writings, recordings, or photographs through testimony if the case is sufficiently complex and the evidence being summarized is not "live testimony presented in court." The summary testimony must be accompanied by a limiting jury instruction,[2] and the underlying evidence must be admitted and available to the jury.[3]

The district court allowed the government to present portions of Lucas's twelve to thirteen hours of civil deposition testimony by having Velasquez paraphrase some of its content. The paraphrasing described parts of the deposition that had not been already presented to the jury; it was interspersed with video of the actual deposition testimony. This paraphrasing is effectively a summary of Lucas's deposition testimony, all of which was admitted into evidence by agreement and was available for the jury to review.

It was error to permit Velasquez to paraphrase the deposition testimony,

---

[2] "Full cross-examination and admonitions to the jury minimize the risk of prejudice." *United States v. Bishop*, 264 F.3d 535, 547 (5th Cir. 2001).

[3] *Id.* There is conflicting precedent in this circuit as to whether the evidence relied upon for the summary must be presented to the jury or merely admitted. The rule states that "[t]he proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place. And the court may order the proponent to produce them in court." FED. R. EVID. 1006.

Our first summary-evidence decision under Rule 1006 required that evidence be merely available. *United States v. Smyth*, 556 F.2d 1179, 1184 (5th Cir. 1977) (holding that the summaries provided under the rule were themselves evidence, in part because "the rule requires only the availability of the underlying documents"). In *United States v. Nguyen*, 504 F.3d 561, 572 (5th Cir. 2007), the standard was heightened: "[W]hile summary witnesses may be appropriate in complex cases in certain circumstances, they are improper for introducing evidence that the jury has not previously heard." *Id.* That is in conflict with *Smyth*, 556 F.2d at 1184. The rule of orderliness tells us to ignore that particular holding of *Nguyen* and permit summary evidence testimony that is based on evidence that is admitted and available, but not necessarily presented, to the jury. *See Jacobs v. Nat'l Drug Intelligence Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008).

which was insufficiently complex. Our decisions finding adequate complexity include, for example, the submission of false crop-insurance claims and tax prosecutions that involved "seventeen days of technical testimony." *Fullwood*, 342 F.3d at 410–11, 414 (crop insurance); *Bishop*, 264 F.3d at 547 (tax). In contrast, the summary here was of portions of a long deposition rather than complex investigations. The government instead could have shown the relevant clips from the deposition; complexity did not bar it from doing so. The government also did not explain why that was not an option other than that the deposition was lengthy.

## B.

The error, however, was not "so clear or obvious that 'the trial judge and prosecutor were derelict in countenancing it, even absent the defendant's timely assistance in detecting it.'"[4]  "An error is not plain under 'current law' 'if a defendant's theory requires the extension of precedent.'"[5]

We have not directly addressed a situation in which deposition testimony of a criminal defendant is summarized by a prosecution witness, so the finding of error is an "extension of precedent." *See Trejo*, 610 F.3d at 319. Furthermore, summarizing a criminal defendant's lengthy deposition testimony from an earlier case is more closely related to the purpose of the rule than is the summarization of the government's case-in-chief on rebuttal, which we have allowed under plain error review. *See Fullwood*, 342 F.3d at 413.

The length of the deposition was arguably voluminous, and the deposition transcripts and video were available for the jury. *See Smyth*, 556 F.2d

---

[4] *United States v. Narez-Garcia*, 819 F.3d 146, 151 (5th Cir. 2016) (quoting *United States v. Hope*, 545 F.3d 293, 295–96 (5th Cir. 2008)).

[5] *United States v. Trejo*, 610 F.3d 308, 319 (5th Cir. 2010) (quoting *United States v. Jackson*, 549 F.3d 963, 977 (5th Cir. 2008)).

No. 15-41229

at 1184. Velazquez also did not seriously mischaracterize Lucas's deposition in his paraphrasing, another circumstance in which we have found no plain error. *See Castillo*, 77 F.3d at 1500. Admitting the summary testimony under these circumstances was not such a plain error that the court was "derelict in countenancing it . . . ." *Narez-Garcia*, 819 F.3d at 151.[6]

V.

Lucas claims that Velazquez offered inappropriate opinion testimony. As Lucas concedes, he did not object, so we use the plain-error standard. *Fullwood*, 342 F.3d at 413. Lucas contends that Velasquez should not have been permitted to testify that drafting, an email technique, was used by terrorists or to suggest that some of Lucas's deposition testimony was inconsistent with the use of drafting. Given the overwhelming quantum of evidence used to convict, any error did not affect Lucas's substantial rights under the third prong of plain-error review and, in any event, under the fourth prong, the putative error would not "seriously affect[ ] the fairness, integrity, or public reputation of the proceedings." *United States v. Aguirre-Romero*, No. 16-40231, 2017 U.S. App. LEXIS 3329, at *1 (5th Cir. Feb. 23, 2017) (per curiam).

AFFIRMED.

---

[6] Because Lucas's attempt to prevail on plain-error review fails at the second prong, we do not examine the error under the third or fourth prong.

No. 15-41229

STEPHEN A. HIGGINSON, Circuit Judge, concurring:

I concur in affirming the judgment, but write separately to note that I would resolve Lucas's assertion of error about Special Agent Richard Velasquez on the other elements of plain-error review. Lucas challenges, and the majority opinion addresses, the agent as an impermissible "summary witness," in violation of Rule 1006 ("Summaries to Prove Content") of the Federal Rules of Evidence. But the record does not reveal that the Government in fact offered, Lucas objected to, or that the district court viewed the agent as a summary witness.

To elaborate briefly, and to "promote the development of evidence law," Fed. R. Evid. 102, I read Rule 1006 as a rule of inclusion, rather than exclusion, and therefore inapplicable to Agent Velasquez's testimony. In my view, Agent Velasquez's testimony must be either lay or expert. Fed. R. Evid. 701-702; *cf. United States v. Fullwood*, 342 F.3d 409, 413-14 (5th Cir. 2003) (cautioning against "rebuttal witness" whose testimony was not "in and of [itself] evidence or proof of any facts"); *United States v. Castillo*, 77 F.3d 1480, 1499-1500 (5th Cir. 1996) (cautioning against expert testimony about matters beyond personal knowledge or special expertise). If offering admissible lay- or expert-opinion testimony, Agent Velasquez may be cross-examined, *see* Rule 611(b)-(c), or relevant here, interrupted pursuant to Rule 106 ("the rule of completeness"). His testimony would also be subject to the rule against hearsay in Rule 802, exclusion under the balancing test of Rule 403, or other district court control according to Rule 611(a). *See generally United States v. Nelson*, 732 F.3d 504, 518 n.4 (5th Cir. 2013). Obliging parties to offer and object to testimony using the explicit framework provided by our evidentiary rules has advantages that I fear are lost by recognizing new categories of witnesses, like "summary witnesses," which in turn requires more difficult-to-define strictures, like whether a case is "complex" enough for "recapitulation" testimony.

Determinatively here, however, I am appreciative and agree with the majority's conclusion that no plain error occurred.