# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
June 8, 2022

Lyle W. Cayce
Clerk

No. 21-30318

Cleo Fields,

*Plaintiff—Appellant*,

*versus*

QBE Specialty Insurance Company,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:19-CV-209

Before Jones, Stewart, and Duncan, *Circuit Judges*.

Per Curiam:[*]

After Louisiana State Senator Cleo Fields's 16,000-square-foot home was struck by lightning in 2016, he filed a claim with his insurer, QBE Specialty Insurance Company ("QBE"), and received a $1,018,412 payout. Fields then sued QBE, claiming the adjustment was in bad faith and the payout was insufficient and untimely. To testify on his behalf, Fields hired an

---

[*] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 21-30318

engineer, who inspected the property, prepared a report, and estimated damages north of $1.6 million. The district court excluded the engineer's testimony as unreliable and granted QBE summary judgment. We affirm.

I.

On June 28, 2016, Fields's home was struck by lightning, which damaged parts of the roof, chimney, and electrical and plumbing systems. He filed a claim under his personal insurance policy with QBE for the damage to the dwelling, damage to his personal property, and lost use. A QBE adjuster inspected Fields's home and reported a "large loss," requiring a follow-up inspection. After two more inspections, QBE's engineers prepared reports, and Fields and QBE began collecting repair estimates.

Over the next year, QBE paid Fields $1,018,412 for the covered losses and repairs, of which $443,452 accounted for damage to the dwelling, $500,000 for his personal property, and $75,000 for lost use. During that time, QBE regularly requested documentation of work performed and damages claimed, but Fields rarely responded. After paying out on Fields's claim, QBE closed it.

In June 2018, Fields sued QBE, alleging it breached the policy by underpaying his claim and violated Louisiana law by not fairly and promptly adjusting his claim. After nine months in state court, Fields voluntarily dismissed QBE's Louisiana co-defendant,[1] so QBE removed the case to federal court. It was not until May 2019—almost three years after the lightning strikes—when Fields hired engineer John Crawford to assess the damage to his home and prepare an expert report. Crawford and his team twice visually inspected the site with Fields and analyzed QBE's documents

---

[1] The dismissed co-defendant was 4LP, LLC, the company who had installed lightning protection on Fields's home.

and subcontractors' reports. In a February 2020 report, Crawford opined that all dwelling damage was the result of lightning strikes on June 28, 2016, and the necessary repairs and replacements would cost $1,654,522.

QBE declined to adjust Fields's claim in response, and instead moved for summary judgment, and to exclude Crawford's report. QBE challenged Crawford's qualifications and the report's reliability under Federal Rule of Evidence 702. Before trial, the district court found Crawford qualified but excluded his report and testimony as unreliable. Days later, the district court granted summary judgment for QBE on each of Fields's claims. Fields appealed.

## II.

We review summary judgments *de novo*. *Patel v. Texas Tech Univ.*, 941 F.3d 743, 747 (5th Cir. 2019); FED. R. CIV. P. 56(a). We review the exclusion of expert testimony for abuse of discretion. *Certain Underwriters at Lloyd's, London v. Axon Pressure Prod. Inc.*, 951 F.3d 248, 256 (5th Cir. 2020) (citation omitted).

## III.

Fields's challenge to the summary judgment rises or falls on whether the district court properly excluded Crawford's expert testimony, the only evidence offered to support his claims. To assess the admissibility of Crawford's testimony, the court was required to determine whether Crawford was "qualified as an expert by knowledge, skill, experience, training, or education"; whether his testimony would "help the trier of fact to understand the evidence or to determine a fact in issue"; whether "the testimony [was] based on sufficient facts or data" and "reliable principles and methods"; and whether Crawford "reliably applied the principles and methods to the facts of the case." FED. R. EVID. 702; *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579 (1993). Fields bore the burden of establishing the

admissibility of Crawford's opinions by a preponderance of the evidence. *United States v. Fullwood*, 342 F.3d 409, 412 (5th Cir. 2003). The district court determined Crawford's testimony did not meet these requirements because it was based on unreliable methods or principles. We see no abuse of discretion in that ruling and, hence, no error in the grant of summary judgment.

Crawford's report asserted that he "performed site inspections . . . to evaluate visibly existing conditions at the subject property" because "[t]he subject residence was reportedly damaged by lightning on June 28, 2016." Based on lightning strike data, Crawford reasoned that at least 10 lightning strikes could have hit Fields's home that day. In his experience, lightning generally damages structures with fire, electric currents, and shock waves. At Fields's home, Crawford concluded, the lightning strikes by way of shock waves and power surges "caused damage to the slate roof, copper roof, roof framing, chimney, porch tile, interior finishes, subsurface natural gas lines, air conditions systems, and low and high voltage electoral systems and components."

Crawford asserted that this determination was based on his site inspections, his speaking to Fields, QBE's reports and estimates, and his engineering, restoration, and contractor experience. During the inspection, Crawford claimed to have smelled natural gas and to have observed damaged, repaired, and displaced slate roof tiles and copper panels; patches of dead grass; a displaced lightning rod; replaced chimney stones; shards of slate; charred roof decking and insulation; damages to rafters; drywall cracks; and a water stain on the third-floor ceiling.

The parties agree that some repairs and estimates had already been performed before the inspection. But Crawford had not spoken with any other inspectors, was unsure when the roof was last repaired or replaced, and

was confused about "what exactly had and had not been done" before and since the lightning strikes. Crawford did not perform any independent testing on the roof or electrical systems, relying on Fields's representations that the roof was replaced in 2008 and that every component was not working. In most instances, Crawford simply recommended "replacement . . . in lieu of repair," given lightning's usual effects on roofs and electrical systems.

While his opinions based on experience are not inherently unreliable, Crawford still needed to show how his experience or expertise led to his conclusions, especially about causation. *See, e.g.*, *Bias v. Standard Guar. Ins. Co.*, 385 F. App'x 398, 400 (5th Cir. 2010) (noting "causation should come first and the cost second, not the other way around"). He failed to do so. As the district court recognized, the passage of time, lack of accounting for post-strike repairs, reliance on Fields's representations alone, and drastic difference in repair estimates all cast doubt on the reliability of Crawford's underlying principles and methods.

As a last-ditch effort, Fields frames QBE's *Daubert* motion as limited to only some of Crawford's opinions. On this view, even if those few opinions are inadmissible, the court abused its discretion by excluding the rest without explaining why. That argument fails. As the district court's summary-judgment order stressed, QBE challenged the admissibility of the *entirety* of Crawford's testimony. It then became Fields's burden to demonstrate its admissibility by a preponderance of the evidence. *Fullwood*, 342 F.3d at 412. He failed to do so, and the district court thoroughly explained why.

In sum, to satisfy Rule 702 and *Daubert*, Crawford needed to explain how the evidence informed his conclusions. That requires more than the declaration that "it is so." *Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007). The district court therefore did not abuse its discretion in excluding Crawford's report and testimony. And without that evidence, there is no

No. 21-30318

genuine dispute of material fact as to whether QBE underpaid for the dwelling claim, untimely paid the personal-property claim, or acted in bad faith in adjusting the claims. *See* FED. R. CIV. P. 56(a).

AFFIRMED.