# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

January 8, 2025

Lyle W. Cayce
Clerk

No. 23-10999

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

MARCO ANTONIO GONZALEZ,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:17-CR-468-1

_____

Before HO, ENGELHARDT, and DOUGLAS, *Circuit Judges*.

PER CURIAM:[*]

A jury found Marco Gonzalez guilty of several drug-trafficking offenses, as well as possessing a firearm as a convicted felon. He appeals those convictions and his accompanying life sentence. For the reasons explained below, we AFFIRM.

_____

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

No. 23-10999

I.

In August 2016, Drug Enforcement Administration ("DEA") agents in Dallas, Texas, received information regarding a large methamphetamine transaction that was about to occur. Because of the tip, agents observed a five-kilogram methamphetamine transaction. Agents began to watch the individual who delivered the methamphetamine and eventually observed him stop to meet with Gonzalez while he was in route to an apartment linked with the head of a drug-trafficking organization that was importing methamphetamine from Mexico. The investigation further revealed that Gonzalez leased office space at Hampton Motors and used it for drug transactions.

Agents determined that the drug-trafficking organization was importing large amounts of liquid methamphetamine, which was then taken to various residential homes in Dallas for recrystallization. The liquid methamphetamine was imported from Mexico using large semi-trucks. The fuel tanks for the trucks were partially drained, refilled with liquid methamphetamine, and then transported to Dallas. There, the fuel was separated and removed, and the liquid methamphetamine was recrystallized.

Investigators identified the residential homes used for the recrystallization process and executed search warrants at these locations in 2017. The searches revealed cash, firearms, liquid and crystal methamphetamine, marijuana, heroin, and cocaine. Gonzalez's home was also searched. During the search, Gonzalez attempted to flee and threw a plastic bag with money over the fence. He was ultimately arrested.[1]

A grand jury later charged Gonzalez in a four-count superseding indictment with: (1) conspiracy to possess with intent to distribute

_____

[1] Gonzalez was arrested pursuant to a criminal complaint alleging he conspired to distribute methamphetamine in violation of 21 U.S.C. § 846.

methamphetamine, in violation of 21 U.S.C. § 846 ("Count One"); (2) possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1) ("Count Two"); (3) possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) ("Count Three"); and (4) possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) ("Count Four"). A jury convicted him on all four counts. The district court then sentenced him to life imprisonment on Count One, 240 months' imprisonment on Count Two, 480 months' imprisonment on Count Three, and 120 months' imprisonment on Count Four, all to run concurrently. On appeal, Gonzalez challenges his convictions and his life sentence.

## II.

Gonzalez targets his convictions first. He raises four challenges on this front. First, he challenges the admissibility of certain testimony. Second, he challenges the admissibility of certain character evidence. Third, he makes a prosecutorial misconduct claim. And fourth, he argues that the cumulative-error doctrine requires reversal. We address each in turn below.

## A.

Gonzalez first claims that the district court mishandled the testimony provided by Special Agent Todd Brackhahn of the DEA in three ways: The court (1) improperly admitted the entirety of Brackhahn's testimony as expert testimony, (2) admitted summary testimony from Brackhahn, and (3) admitted testimony by Brackhahn that constituted improper bolstering.

We review each of these challenges for plain error, which requires "a showing that there was (1) error, (2) that is plain, and (3) that affects substantial rights." *United States v. Staggers*, 961 F.3d 745, 754 (5th Cir. 2020) (quotation marks and citations omitted). An error affects "substantial rights" when "there is a reasonable probability that the result of the proceedings

would have been different but for the error." *United States v. Gonzalez-Ro-driguez*, 621 F.3d 354, 363 (5th Cir. 2010).

The Government qualified Brackhahn as an expert. Brackhahn's testimony then: (1) explained how the investigation was initiated and led to Gonzalez; (2) identified members of the drug-trafficking organization, their roles, and locations they used; (3) described the process for obtaining wiretap authorization; (4) interpreted specific phone calls and text messages involving Gonzalez; (5) discussed the search warrants executed against the drug-trafficking organization; (6) described Gonzalez's post-arrest interview as a full confession; (7) recounted the details of Gonzalez's post-arrest interview; (8) described Gonzalez's frequent contact with co-conspirators based on call records; (9) rebutted the testimony given by Gonzalez's father about whether Gonzalez lived with him based on physical surveillance and cell-phone pings; and (10) rebutted other testimony given by Gonzalez's father about owning a bag of money that Gonzalez already claimed.

At the charge conference, the Government suggested that the scope of Brackhahn's expert testimony be clarified for the jury as limited to "drug trafficking and coded language," since "the rest of it was facts." The court agreed because "not everything that came out of [Brackhahn's] mouth should be viewed with a lens of expert testimony." Gonzalez did not object. After closing arguments, the jury was instructed in writing that Brackhahn provided expert testimony as to "drugs and coded language" and orally that he was an expert in "drug trafficking and surveillance."

1.

Citing *United States v. Haines*, 803 F.3d 713, 731–32 (5th Cir. 2015), Gonzalez argues the district court erred by allowing Brackhahn to testify as both an expert and lay witness without (1) providing limiting instructions to the jury after Brackhahn was qualified as an expert witness and began to

testify about the facts and investigation of the case, or (2) specifically instructing the jury at any point that not all of Brackhahn's testimony was expert testimony. Gonzalez further argues his rights were substantially affected because there is a reasonable probability that Brackhahn's improper testimony affected the outcome of the trial.

We need not determine whether the court committed plain error because Gonzalez's substantial rights were unaffected. The evidence was stacked against him, even without Brackhahn's testimony. Testimony by Gonzalez's co-conspirators indicated that he sold several kilograms of methamphetamine from May 2016 to August 2017; used Hampton Motors for at least three of these transactions as shown on pole camera footage and text messages; knew of at least two liquid methamphetamine shipments to Hampton Motors; assisted a co-conspirator with selling a car in exchange for methamphetamine; and provided one of his co-conspirators with a firearm for protection. Documentary evidence also included photographs of heroin and cocaine seized from Gonzalez's office at Hampton Motors and the residential homes used to process the methamphetamine. So any error in admitting the entirety of Brackhahn's testimony as expert testimony was harmless. *See Gonzalez-Rodriguez*, 621 F.3d at 363; *see also United States v. Oti*, 872 F.3d 678, 692 (5th Cir. 2017) (finding harmless error where "ample evidence" supported conviction).

### 2.

Gonzalez argues that the district court erred by admitting summary witness testimony by Brackhahn because the record was not voluminous and Brackhahn impermissibly repeated the Government's case-in-chief by discussing topics already covered by other witnesses.

"For complex cases, we have allowed summary witnesses in a limited capacity." *United States v. Fullwood*, 342 F.3d 409, 413 (5th Cir. 2003).

"While such witnesses may be appropriate for summarizing voluminous records, as contemplated by [Federal Rule of Evidence] 1006," *United States v. Armstrong*, 619 F.3d 380, 385 (5th Cir. 2010), summary witnesses "cannot organize the case for the jury, substitute for closing argument, . . . or introduce evidence the jury has not previously heard," *United States v. Nicholson*, 961 F.3d 328, 335 (5th Cir. 2020) (citations omitted). However, a witness does not provide improper summary testimony where he testifies "to facts that were personally experienced by him even though this testimony bolsters the government's other evidence." *United States v. Castillo*, 77 F.3d 1480, 1499 (5th Cir. 1996) (quotation marks and citation omitted).

Much of Brackhahn's testimony was based on his personal experience. This includes locations searched, firearms and drugs seized, and Gonzalez's post-arrest interview. *See id.* Brackhahn was also the only witness to testify about that interview, the contents of Gonzalez's cell phone, and the results of search warrants. So he did not "merely repeat or paraphrase the in-court testimony of another as to ordinary, observable facts." *United States v. Baker*, 923 F.3d 390, 398 (5th Cir. 2019) (citation and alteration omitted). That some of his testimony corroborated the testimony of other witnesses does not make it summary witness testimony. *See Castillo*, 77 F.3d at 1499. Thus, the district court did not plainly err in allowing Brackhahn to testify about these topics.

3.

Relying on *United States v. Cunningham*, 462 F.3d 708 (7th Cir. 2006), Gonzalez argues that the district court erred by admitting Brackhahn's testimony about the wiretap authorization process and his chart, which listed the judges who authorized the wiretaps. Gonzalez says that this evidence was irrelevant and only showed the jury how strong the Government's evidence was. For this same reason he also challenges Brackhahn's affirmative

responses when asked if the authorizing judges were "judges that work in this courthouse, just like" the presiding district court judge.

Where, as here, a challenge is subject to plain-error review, a lack of binding authority is often dispositive. *United States v. Aderinoye*, 33 F.4th 751, 755 (5th Cir. 2022) (quotation marks and citation omitted). Moreover, although *Cunningham* relied in part on our decision in *United States v. Brown*, 692 F.2d 345 (5th Cir. 1982), neither *Cunningham* nor *Brown* held it was improper bolstering to present testimony about the wiretap authorization process.[2] "[A]n error is not plain if it requires the extension of precedent." *United States v. Cabello*, 33 F.4th 281, 291 (5th Cir. 2022). Thus, we conclude that Gonzalez has not shown plain error as to the admission of Brackhahn's testimony about the wiretap authorization process.

B.

Gonzalez next claims that the district court erred by admitting certain character evidence under Federal Rule of Evidence 404(b). He asks that we review this claim with a less deferential abuse-of-discretion standard. But we review this claim for plain error because Gonzalez failed to raise relevant objections that would not have been futile. *See United States v. Garcia-Carrillo*, 749 F.3d 376, 378 (5th Cir. 2014); *Taita Chem. Co., Ltd. v. Westlake Styrene*, 351 F.3d 663, 668 (5th Cir. 2003).

---

[2] In *Cunningham*, the Seventh Circuit determined that "the government witness's testimony suggested to the jury that a panel of senior government lawyers in the Office of the Attorney General in Washington, D.C., and others in law enforcement were of the opinion that there was probable cause to believe the defendants were indeed engaging in criminal activity." 462 F.3d at 709–10. Though Brackhahn testified that obtaining a wiretap was a complicated process, he did not attest that the authorizing judges believed there was probable cause that Gonzalez engaged in criminal activity. In *Brown*, we considered the government's admission of the wiretap authorization order to be erroneous because it contained inadmissible hearsay. 692 F.2d at 350–51.

The Government stated pre-trial that it intended to call Stephen Smith as a witness to testify about purchasing drugs from Gonzalez on multiple occasions and that Gonzalez attacked him when he was transported to the same cell as Gonzalez before trial.  The court ruled the attack admissible but warned the Government "don't embellish it obviously" and that "at the end of every opening, [the district court] can say [to the jury] everything you heard is not evidence."

The Government also noted pre-trial that it was investigating a potentially threatening phone call Gonzalez made the night before to the father of co-conspirator Ivan Gonzalez.  It planned to introduce the phone call as evidence of Gonzalez's guilt because Ivan was slated to testify against him.

At trial, the Government referenced the fight between Gonzalez and Smith in its opening argument, noting that Smith "was assaulted by [Gonzalez]," "beaten up with a broken nose by [Gonzalez]," and that "the beating was in retribution for him being a witness."  Gonzalez objected to the admission of the attack, which the district court overruled because the prejudicial nature of the incident did not outweigh its probative value.  The Government thus elicited testimony from Smith about the attack.  And in its closing argument, the Government discussed the attack again:

> He's probably sorry he got caught, but there is no remorse. He's proud of what he did. He's just disappointed it didn't work. And you know what? It is not the first time he's done something like that. He's a coward when he attacked Stephen Smith. … He would do anything to get a witness to stop coming. … That is the kind of person he is.

The Government also put Gonzalez's phone call from jail to Ivan's father into evidence.  Because the call was in Spanish, the Government produced an accompanying translation prepared by the DEA.  Brackhahn then identified Gonzalez's voice on the call and labeled it a threat.   The

Government also referred to the call in its closing argument, stating: "[Ivan's] father didn't do anything wrong. His wife didn't do anything wrong. His children didn't do anything wrong. But for the rest of their lives because of [Gonzalez], because of this coward, they have to watch behind their back everywhere they go."

Under Rule 404(b), "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," but "may be admissible for another purpose." Fed. R. Evid. 404(b). "As a threshold matter, when the evidence sought to be introduced is uncharged, we must first determine whether the evidence is 'sufficient to support a finding that the crime or act actually occurred.'" *United States v. Meyer*, 63 F.4th 1024, 1040 (5th Cir. 2023) (quoting *United States v. Smith*, 804 F.3d 724, 735 (5th Cir. 2015)). If this threshold requirement is met, we evaluate the admissibility of evidence under a two-prong determination set forth in *United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978). First, we ask whether the evidence is relevant under Rule 401. *Meyer*, 63 F.4th at 1040. Second, we consider "'(1) the government's need for the extrinsic evidence, (2) the similarity between the extrinsic and charged offenses, (3) the amount of time separating the two offenses, and (4) the court's limiting instructions,' in addition to the 'overall prejudicial effect of the extrinsic evidence.'" *Id.* at 1040–41 (quoting *United States v. Juarez*, 866 F.3d 622, 627 (5th Cir. 2017)).

We start with the threshold requirement. Gonzalez does not challenge the sufficiency of the evidence that he called Ivan, and there is sufficient evidence showing Gonzalez assaulted Smith. Smith testified that when he was relocated to a different cell, he was punched and recognized Gonzalez as his assailant. Smith further testified that after they fought for a few minutes, Gonzalez called him a "snitch" and a "rat" and asked why Smith was testifying against him. Gonzalez did not impeach Smith's version of the events

No. 23-10999

on cross-examination, or call any other witness to contradict Smith's testimony. Thus, there was sufficient evidence that Gonzalez assaulted Smith. *See United States v. Colvin*, 614 F.2d 44, 45 (5th Cir. 1980) (finding testimonial evidence sufficient to satisfy threshold consideration of 404(b) evidence).

Turning to the first *Beechum* prong, we further conclude that the fight and the phone call are relevant to the case. *See Meyer*, 63 F.4th at 1040. "Evidence of a threat by a defendant respecting a specific adverse witness indicates that the defendant was conscious of the weakness of his case" and is admissible under Rule 404(b) because it is "probative of an issue other than his character." *United States v. Rocha*, 916 F.2d 219, 241 (5th Cir. 1990).

As to the second *Beechum* prong, the probative value of the fight and the call is not substantially outweighed by undue prejudice such that their admission amounted to plain error. The Government demonstrated that the evidence went to Gonzalez's guilt. There is no similarity between the charged offenses, which all related to the drug-trafficking conspiracy, and assault or threatening a witness. *See United States v. Kinchen*, 729 F.3d 466, 473 (5th Cir. 2013) (explaining the "more closely an extrinsic offense resembles the charged offense, the greater the prejudice to the defendant"). And the temporal closeness between the trial and the extrinsic offenses increases their probative value. *Cf. Meyer*, 63 F.4th at 1041–42 (noting that "temporal remoteness weakens" probative value). The district court also provided limiting instructions to the jury at the end of closing arguments, reminding the jury that Gonzalez was only on trial for the charged offenses.[3]

---

[3] Though Gonzalez contends the district court's instruction was vague, he does not dispute that a limiting instruction was given.

10

All four factors cut against Gonzalez, but we "must still evaluate the district court's decision under a commonsense assessment of all the circumstances surrounding the extrinsic offense." *United States v. Jones*, 930 F.3d 366, 374 (5th Cir. 2019) (quotation marks and citation omitted). We have said that "[s]uch circumstances generally include the nature of the prior offense and the likelihood that the 404(b) evidence would confuse or incite the jury." *Juarez*, 866 F.3d at 629. But where a defendant was on trial for "serious drug offenses" and there is significant evidence to support those charges, evidence of an extrinsic, violent offense, such as assault, is not unduly prejudicial under the *Beechum* test. *See Meyer*, 63 F.4th at 1042. Such is the case here. Accordingly, we conclude that Gonzalez has failed to show plain error as to the admission of this evidence.

## C.

Gonzalez next challenges the prosecutor's remarks at trial. We review these claims in two steps. Unpreserved allegations of prosecutorial misconduct, like this one, are reviewed for plain error. *United States v. Romans*, 823 F.3d 299, 315 (5th Cir. 2016).

Gonzalez claims the prosecutor made three improper remarks during closing arguments: (1) labeling Gonzalez as a "potential murderer" and a "rat," thus improperly commenting on the "kind of person" Gonzalez is; (2) commenting on the truthfulness of Pablo's testimony; and (3) concluding that Gonzalez lacked remorse because of his conduct in jail. Gonzalez does not explain why the third remark was improper or cite any authority in support of this assertion, so any claim of error on these remarks is waived for insufficient briefing. *See Joiner v. United States*, 955 F.3d 399, 406 (5th Cir. 2020). And the remaining two remarks did not affect his substantial rights, even if they were improper. *See United States v. Sanchez*, 961 F.2d 1169, 1176 (5th Cir. 1992).

In evaluating the effect on a defendant's substantial rights "the determinative question is 'whether the prosecutor's remarks cast serious doubt on the correctness of the jury's verdict.'" *United States v. Aguilar*, 645 F.3d 319, 325 (5th Cir. 2011) (quoting *United States v. Gracia*, 522 F.3d 597, 603 (5th Cir. 2008)). We consider: "(1) the magnitude of the statement's prejudice, (2) the effect of any cautionary instructions given, and (3) the strength of the inculpatory evidence other than the improperly bolstered testimony." *Id.* (citing *United States v. McCann*, 613 F.3d 486, 496 (5th Cir. 2010)).

Gonzalez argues the prejudicial magnitude of the prosecutor's remarks shows that his substantial rights were affected because they painted him as a violent person and suggested that his father was not credible. He further argues that the district court's instruction was not effective because it did not specifically tell the jury to disregard the term "potential murderer." The remarks allegedly confused the jury.

"'The magnitude of prejudicial effect is measured by looking at the prosecutor's remarks in the context of the trial in which they were made and attempting to elucidate their intended effect.'" *United States v. Raney*, 633 F.3d 385, 394–95 (5th Cir. 2011) (per curiam) (quoting *United States v. Ramirez-Velasquez*, 322 F.3d 868, 875 (5th Cir. 2003)). Where remarks are not "'so pronounced and persistent' as to 'permeate the entire atmosphere of the trial,'" they do not warrant reversal. *Ramirez-Velasquez*, 322 F.3d at 875. We also "give substantial weight to the district court's assessment of the prejudicial effect." *Id.*

We agree with the district court—the comments were not so prejudicial as to warrant reversal. The prosecutor's comment that Gonzalez was a "potential murder" occurred once. A remark made one time is hardly "persistent" and "pronounced" such that it warrants reversal. *Id.* Similarly, the reference to Gonzalez as a "rat" comprised just two sentences of the

prosecutor's closing argument. And because the statements about his father's credibility were based on the record, they also do not warrant reversal.[4] *See United States v. Jones*, 839 F.2d 1041, 1050 (5th Cir. 1988).

The district court's instruction was also adequate, provided that we have previously rejected challenges to similar instructions. *See Ramirez-Velasquez*, 322 F.3d at 875.

Lastly, substantial evidence supports his guilt. *See supra* Section II.A.1. So Gonzalez's substantial rights were not affected by the prosecutor's remarks. *See id.* Therefore, we decline to reverse his conviction on this basis.

## D.

Gonzalez claims that his conviction should be reversed under the cumulative-error doctrine. The cumulative-error doctrine "'provides that an aggregation of non-reversible errors . . . can yield a denial of the constitutional right to a fair trial, which calls for reversal.'" *United States v. Moparty*, 11 F.4th 280, 298 (5th Cir. 2021) (quoting *United States v. Delgado*, 672 F.3d 320, 343–44 (5th Cir. 2012)). Reversal under this doctrine "is only justified in the unusual case in which synergistic or repetitive error violates the defendant's constitutional right to a fair trial." *Id.* (citation and quotation marks omitted).

Gonzalez relies on *United States v. Riddle*, 103 F.3d 423 (5th Cir. 1997). There, we reversed the defendant's conviction under the cumulative-error doctrine because the district court admitted lay witness testimony by the Government's expert, barred testimony by the defendant's expert, admitted documentary evidence containing hearsay, and admitted testimony of

---

[4] Brackhahn's testimony rebutted testimony by Gonzalez's father that Gonzalez lived with him and that he owned the bag of money agents recovered during Gonzalez's arrest.

extraneous bad acts. *Id.* at 434–35. And had the court ruled differently, it would have been "a very different trial." *Id.* at 434. That is not the case here. *See supra* Section II.A.1. Applying the cumulative-error doctrine is "especially uncommon where, as here, the government presents substantial evidence of guilt." *United States v. Boukamp*, 105 F.4th 717, 748 (5th Cir. 2024) (quoting *Delgado*, 672 F.3d at 344); *see also Moparty*, 11 F.4th at 299 ("Any mistakes must be measured against the weight of the evidence presented."). Accordingly, the cumulative-error doctrine does not apply.

## III.

We now turn to the challenges Gonzalez pits against his life sentence. He claims that his within-Guidelines sentence is procedurally and substantively unreasonable. We review this claim in two parts. *United States v. Gomez*, 905 F.3d 347, 351 (5th Cir. 2018). "First, we ensure the district court committed no significant procedural error. Second, if there was no procedural error, we review the substantive reasonableness of the sentence for abuse of discretion." *United States v. Gaspar-Felipe*, 4 F.4th 330, 344 (5th Cir. 2021) (citations omitted). Within-Guidelines sentences are "presumed reasonable on appeal." *United States v. Tuma*, 738 F.3d 681, 695 (5th Cir. 2013).

Following Gonzalez's convictions, the probation officer prepared a presentence investigation report ("PSR"). In calculating the drug quantity, the PSR determined that Gonzalez was responsible for two shipments of liquid methamphetamine offloaded at Hampton Motors and the additional heroin and cocaine he distributed. All told, Gonzalez accounted for 11,520,257.4 kilograms of converted drug weight. This resulted in a base offense level of 38. The PSR then recommended sentencing enhancements, including enhancements for maintaining a drug premises and using hazardous chemicals.

No. 23-10999

Gonzalez's Sentencing Guidelines range was life, and he was sentenced accordingly.

## A.

Gonzalez argues his sentence is procedurally unreasonable based on the district court's drug-quantity calculation and its decision to apply the drug-premises and hazardous-chemical enhancements. We review these claims for clear error. *United States v. Lujan*, 25 F.4th 324, 327–28 (5th Cir. 2022); *United States v. Gentry*, 941 F.3d 767, 792 (5th Cir. 2019) (citations omitted).

## 1.

Gonzalez challenges the district court's drug-quantity calculation, arguing that it used inconsistent and thus inaccurate methodology.[5] He also challenges the PSR's reliability because its factual findings did not take trial testimony into account.

The PSR based its calculation on U.S.S.G. § 2D1.1(a)(5). Under § 2D1.1(a)(5), the base offense level is determined by using the Drug Quantity Table set forth in § 2D1.1(c)(1). Here, the PSR explained that "for ease of calculation," it would only use (1) the two shipments of liquid methamphetamine unloaded at Hampton Motors—which agents estimated accounted for 80 gallons of liquid methamphetamine each, (2) one heroin transaction, and (3) the brick of cocaine seized from Gonzalez's office. The resulting total

---

[5] In response to Gonzalez's objections, the probation officer filed an addendum to the PSR, explaining that the drug quantity calculation was conservative, and the conversion provided by the case agent based on his expertise and familiarity with the case was permissible under U.S.S.G. § 2D1.1, cmt. 5. The addendum further noted that had the liquid methamphetamine deliveries been excluded, Gonzalez's base offense level would be the same based on other transactions and seizures attributed to Gonzalez which were not included in the calculations to avoid double counting.

converted drug weight for these three quantities was 11,520,257.4 kilograms. This resulted in a base offense level of 38. *See* § 2D1.1(c)(1).

The district court embraced this conclusion for two independent reasons. "[T]here are a number of ways that someone could get to a level 38 based on these facts," it explained. The court agreed with the PSR's calculation and adopted it. But it also held that Gonzalez's post-arrest interview, which "came into evidence at trial," also supported it.

Gonzalez challenges only the first reason. But the court's second reason stands on its own. So the district court's drug-quantity calculation was not clearly erroneous. *See Lujan*, 25 F.4th at 328.

### 2.

Gonzalez next argues that the district court erred in applying the drug-premises and hazardous-waste enhancements. As to the first, he argues that Hampton Motors was primarily used for lawful purposes. As to the second, he argues that the district court failed to recognize that acetone is commonly stored, transported, sold, and discarded.

These alleged errors were harmless. Without these enhancements, Gonzalez's total offense level still would have been 44—a level above the maximum total offense level.

### B.

Gonzalez challenges his life sentence as substantively unreasonable. Specifically, he argues that the district court failed to provide an explanation for his sentence or consider arguments in favor of a downward variance, and that a life sentence is greater than necessary to accomplish the 18 U.S.C. § 3553 sentencing goals.

This argument is likely mislabeled. *See Gall v. United States*, 552 U.S. 38, 51 (2007) (explaining that failing to adequately explain the chosen

sentence is a significant procedural error). But either way, the district court *did* explain its sentence.[6] So this cannot serve as grounds for unreasonableness.

## IV.

For the reasons explained, we AFFIRM Gonzalez's convictions and sentence.

---

[6] The district court explained its reasons for the sentence as: (1) Gonzalez's criminal history which, though mostly unscored, "dat[ed] back to 1995" and consisted of numerous felony convictions and misdemeanor convictions, including several for violent offenses such as assault and aggravated assault, and an 11-year term of imprisonment; (2) the serious nature of the offense (trafficking large amounts of controlled substances and possessing numerous firearms as a convicted felon) and the need to provide "just punishment;"(3) the multiple instances of obstruction of justice, which the district court found "troubling;" and (4) the need to promote respect for the law and afford adequate deterrence where Gonzalez's prior convictions and term of imprisonment did not deter him from committing the charged offenses.